[L. A. No. 637.   In Bank.—February 11, 1901.]

JOHN A. OWEN, Respondent, v. POMONA LAND AND WATER COMPANY, Appellant.

NEW TRIAL—SPECIFICATIONS IN STATEMENT—INSUFFICIENCY OF EVIDENCE. Where there is no evidence, or only slight and insufficient evidence, to sustain a particular finding, or a particular part thereof, a specification in the statement on motion for a new trial that there is no evidence to justify or to prove, or tending to prove, such particular finding, or part thereof, is sufficient.

APPEAL FROM NEW TRIAL ORDER—CONCLUSIONS OF LAW—RIGHT OF VENDEE TO IMPROVEMENTS UPON FAILURE OF TITLE.—Upon appeal from an order denying a new trial the conclusions of law are not reviewable; and upon such appeal in an action to enforce rescission of a contract of sale for failure of title and for misrepresentations concerning the title, a conclusion of law as to the right of the vendee to recover the value of his improvements is not the proper subject of review or decision.

---

[4] 31 Am. St. Rep. 355.

Vendor and Purchaser—Rescission of Contract of Sale—Defective' Title—Mistaken Representations—Invalid Railroad Grant.— Where the vendor in a contract of sale claimed title as grantee of a railroad company, and by honest mistake misrepresented the title as good, whereas in fact the railroad company held only a void patent under an invalid railroad grant, such defect in the title, when discovered by the purchaser, is ground for a rescission by him of the contract of sale, if promptly made upon discovery of the defect.

Id.—Act of Congress—Equitable Title of Vendors—Right to Patent—Promise to Purchaser—Delay Without Damage—Rescission not Justified.—Where an act of Congress subsequently passed recognized an equitable right in the vendor as a bona fide purchaser from the railroad company, and gave him the right to receive a patent, which he could not obtain until the railroad patent was vacated, and the purchaser, with full knowledge of the facts, remained in possession and cultivated the land, relying upon the promise of the vendor to obtain a patent, if no unreasonable delay was had in perfecting the title, and the purchaser was not injured by the delay, he is not justified in rescinding the contract for the original defect in the title.

Id.—Right of Rescission Reserved—Performance of Vendor's Promise—Reasonable Opportunity—Revivor of Right.—The purchaser had the right to accept and rely upon the promise of the vendor to perfect the title, and in the meantime hold his right of rescission for the original defect of title in reserve to be exercised, if after reasonable opportunity to do so the vendor failed or refused to fulfill the promise; but the right of the purchaser to rescind will not be revived, until a reasonable opportunity has been afforded to the vendor to comply with the promise, if it is not limited to a specified time.

Id.—Delay Caused by Rule of Land Department—Judicial Notice. Where the delay of the vendor in obtaining the patent under the act providing therefor was caused by a rule of the land department that his proofs could not be received until the patent of the railroad company was vacated, and such rule was not produced in evidence, the court will take judicial notice thereof; and the vendor, not being a party to the suit to vacate the patent, and having no power to expedite a final decision therein, cannot be held responsible for delay in such decision, and cannot be blamed for not procuring a patent under that act.

Id.—Failure to Proceed Under Later Act of Congress—Absence of Notice—Rescission not Warranted.—Where it does not appear that either of the parties were advised that the obtaining of the patent by the vendor could be hastened under a later act of Congress, and no suggestion or request was made by the purchaser that the vendor should proceed thereunder, the purchaser was not warranted in rescinding the contract of sale, by

reason of the original defect in the title, because of the failure of the vendor to proceed thereunder, where he gave no notice affording a reasonable opportunity to the vendor so to proceed before rescinding the contract of sale, and he does not appear to have been injured by the delay.

ID.—FINDING OF DAMAGE NOT SUSTAINED.—A finding that the plaintiff was damaged by the defective title sufficiently to justify a rescission made pending the reasonable delay of the vendor in obtaining the patent promised, is not sustained by the evidence, where it appears that he was living upon the land, was practically certain of securing the title, and was secure against any disturbance of his possession meanwhile, and does not appear to have had any desire to sell the land.

ID.—REPRESENTATIONS AS TO TITLE NOT FRAUDULENT.—The representations as to title honestly made by the vendor, based upon a state of facts warranting him in making the claim of a perfect title, were not fraudulent, and would not justify any charge of fraudulent representations inducing the execution of the contract.

ID.—SALE OF WATER SHARES—PERMANENCY OF WATER SUPPLY—REPRESENTATIONS—EXPRESSION OF OPINION.—Where water shares were sold with the land, any assertion or prediction by the agents of the vendor that the artesian wells furnishing the supply would always yield as abundantly as they were then yielding was but an expression of opinion, in the absence of any guaranty that the water supply should be permanent.

ID.—RESCISSION—FAILURE OF WATER SUPPLY—CONDITIONAL OFFER TO RESCIND—BASIS OF FRAUD—PAYMENT FOR IMPROVEMENTS.—The provision of section 1689 of the Civil Code allowing a rescission, where the consideration fails in a material respect, from any cause, does not apply to support a rescission on account of the failure of water supply, when the only rescission offered and decreed was on the condition that the purchaser should be paid for his improvements, and was based upon an imputation of actual or constructive fraud on the part of the vendor in contracting to convey land to which the vendor had no title.

ID.—BELIEF AND ACTION OF PURCHASER—CONTINUED WATER SUPPLY—ULTIMATE FAILURE—RESCISSION NOT PERMISSIBLE.—Where the purchaser, on the faith of his own belief that the water supply would be permanent, made permanent improvements, and the water supply was continuous for a term of years, if he had had full title, and had paid therefor and for the water stock, he could not, upon final failure of the supply, have rescinded the contract therefor: and where there was a defect in the title, in respect to which his right of rescission did not exist, he could not rescind for failure of the water supply, where he was not misled in respect thereto by any actual or constructive fraud of the vendor.

Id.—Breach of Contract by Purchaser—Failure to Pay Water As-
sessment.—Where the contract of sale required the purchaser to
pay and discharge all taxes, assessments, and "water rates"
that might be "levied or assessed on the premises," and the
water stock was sold with the land under a rule apportioning
ten shares of stock to each acre of land, and they were so
inseparably related under the contract that an assessment upon
the water stock to carry out the purposes of the irrigation
company was, within the meaning of the contract, a "water
rate assessed upon the premises," the failure to pay it was a
breach of the contract by the purchaser.

APPEAL from an order of the Superior Court of San Ber-
nardino County denying a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and A. P. Nichols, for Appellant.

A vendee in possession cannot rescind without restoring pos-
session. (*Rhorer v. Bila*, 83 Cal. 51; *Worley v. Nethercott*, 91
Cal. 512[1]; 2 Pomeroy's Equity Jurisprudence, 500, note 1.)
There was no breach of the contract as to water supply, under
the contract for purchase of water stock. (*Loud v. Pomona
Land etc. Co.*, 153 U. S. 564; *Ward v. Vance*, 93 Pa. St. 499.)
Expressions of opinion cannot vitiate a contract, or constitute
ground for its rescission. (Cooley on Torts, 485; Bigelow on
Fraud, 13.) The representations as to the title were honest,
and not fraudulent. (*United States v. Southern Pac. R. Co.*,
45 Fed. Rep. 596.) The plaintiff had not performed or offered
to perform the contract on his part. (*Loud v. Pomona Land etc.
Co.*, supra.)

Otis & Gregg, and John A. Owen, for Respondent.

A person is conclusively presumed to know the state of his
own title to the property. (*Robins v. Hope*, 57 Cal. 493.) A
purchaser rescinding for failure of title for fraud is entitled to
recover the value of his improvements. (*Gates v. McLean*, 70
Cal. 50; *Worley v. Nethercott*, 91 Cal. 517[2]; *McDonald v. Mis-
sion etc. Assn.*, 51 Cal. 211; *McIndoe v. Morman*, 26 Wis. 588[3];

[1] 25 Am. St. Rep. 209.          [3] 7 Am. Rep. 96.
[2] 25 Am. St. Rep. 209.

*Barnett v. Higgins,* 4 Dana, 565; 2 Sutherland on Damages, 227, 233, note; *Smith v. Stewart,* 83 N. C. 408; *Hill v. Brower,* 76 N. C. 124; *Mason v. Lawing,* 10 Lea, 264.) The question of improvements is a conclusion of law from the findings, which does not arise on this appeal from the new trial order. (*Pacific Mut. etc. Ins. Co. v. Fisher,* 106 Cal. 224; *Pierce v. Willis,* 103 Cal. 91.) Nor is the question before this court of the right to a judgment on the findings. (*Riverside Water Co. v. Gage,* 108 Cal. 240.) The plaintiff was entitled to rescind for failure of consideration from any cause. (Civ. Code, sec. 1689, subd. 4.) Any apparent laches of the plaintiff in rescinding was excused, because the delay was caused by the acts and promises of the defendant. (12 Am. & Eng. Ency. of Law, 560; *Callender v. Colegrove,* 17 Conn. 1; *Freeman v. Kiefer,* 101 Cal. 254.) The purchaser was not bound to take a defective or litigated title (2 Kent's Commentaries, 476; *Easton v. Montgomery,* 90 Cal. 314[4]; *Turner v. McDonald,* 76 Cal. 177[5]; *Bartlett v. McGee* (Cal.), 45 Pac. Rep. 1029; *Koshland v. Spring,* 116 Cal. 689); nor was he bound to take the property piecemeal. (*Nicholls v. Reed,* 109 Cal. 630.) The defendant made no objection to the mode of the offer of rescission, and thereby waived all objections thereto. (*Kofoed v. Gordon,* 122 Cal. 314, 321, 322; Civ. Code, sec. 1501; Code Civ. Proc., sec. 2076.) The plaintiff was entitled to rescind for failure of the water supply without his fault. (Civ. Code, sec. 1689, subd. 4.)

BEATTY, C. J.—This is an action by the vendee of certain land and of certain shares of stock in an irrigation company to cancel the contract and to recover various sums paid to the vendor, and also the value of improvements placed upon the land. The suit is based upon an alleged rescission of the contract of sale, for failure of title and failure of the irrigation company to furnish the quantity of water required for irrigation. The defendant by answer contested the right and the fact of rescission, and by cross-bill sought a specific enforcement of the contract. The cause was tried by the court and findings made upon which judgment was entered in favor of the plaintiff. The defendant appealed from the judgment and

---

[4] 25 Am. St. Rep. 123.    [5] 9 Am. St. Rep. 189.

also from an order denying its motion for a new trial, but the appeal from the judgment having been dismissed for failure to file the transcript in time, there is nothing left to be considered except such matters as can be reviewed upon an appeal from the order, i. e., specifications of insufficiency of evidence to support the findings and of errors of law occurring at the trial.

A preliminary statement of the principal facts of the case will be of assistance in the discussion of these questions: The land which the defendant covenanted to convey is part of a certain section—No. 15—in San Bernardino county, for which the officers of the land department of the United States had issued a patent to the Southern Pacific Railroad Company in 1879. That company sold it to Wicks, who assigned his contract to defendant, who, upon compliance with its terms, received a conveyance in due form from the railroad company. These conveyances and contracts, being duly recorded in San Bernardino county, showed an apparently perfect title in the defendant, but in fact its title was not perfect for the following reasons: This section 15 was a part of the lands included in the provisions of the act of Congress of July 27, 1866, purporting to grant them to the Atlantic and Pacific Railroad Company, in aid of the construction of its road. It was also within the description of lands granted to the Southern Pacific Railroad Company for similar purposes by the act of Congress of March 3, 1871. The Southern Pacific Railroad Company completed its road according to the conditions of its grant, but the Atlantic and Pacific Railroad Company never built that part of its road west of the Colorado river, where the two lines intersected, and the officers of the land department, acting upon their construction of the law, issued patents to the Southern Pacific Railroad Company for lands within the common limits of the two grants. Subsequently, in 1886, Congress passed an act forfeiting the lands granted to the Atlantic and Pacific Railroad Company for breach of the conditions of the grant, and thereafter proceedings were instituted on the part of the United States to vacate the patents so issued, upon the ground that their issuance was unauthorized. Proceedings of this character were pending in January, 1891, when the contract between these parties was entered into. It does not clearly

appear that the patent covering this particular section 15 had been assailed at that time, but actions had been commenced to cancel similar patents for lands similarly situated, and to one of those actions the defendant here was a party. In other words, it had actual knowledge that its title to one parcel of land was assailed upon grounds which equally affected the title to the land which is here involved. But the litigation, so far as it had progressed, had resulted in favor of the defendant's title; that is to say, the decision of the United States circuit court, where the suits were commenced, had sustained the action of the officers of the land department in the issuance of the patents, holding that the Southern Pacific Railroad Company had earned and become entitled to all the lands within the common limits of the two grants. (*United States v. Southern Pac. R. R. Co.*, 45 Fed. Rep. 596; 46 Fed. Rep. 683.) Besides, Congress had in 1887 passed a curative act saving the rights of citizens who had *bona fide* purchased from the patentees lands erroneously patented, as these were, and providing that upon proof of their citizenship and *bona fides* patents should be issued to them without further payment. The plaintiff had no actual knowledge of these matters affecting the title in January, 1891, when he contracted for this land. In an application to purchase, which preceded the contract, plaintiff had stipulated for a certificate of title, and the defendant furnished a certificate made by a reputable title and abstract company, showing that its title was perfect—as in fact it was, so far as appeared by the records of San Bernardino county, which contained no reference to any action by the United States to cancel the patent issued to the Southern Pacific Railroad Company. It is one of the grievances of the plaintiff that the pendency of that litigation, known to the defendant, but unknown to him, and undisclosed by the county records, was not brought to his attention prior to the making of the contract.

The terms of the contract were, in brief, that plaintiff was to pay one thousand dollars cash, one thousand dollars January 14, 1893, and one thousand dollars January 14, 1894, with interest on the deferred payments, and to have immediate possession. Defendant was to convey by deed of grant, bargain, and sale certain described lots in said section 15, containing

twenty and thirty-two hundredths acres of land, "together with two hundred and three and two-tenths (203.2) shares of the stock of the Del Monte Irrigation Company, representing two and thirty-two thousandths (2.032) inches of water under four (4) inch pressure, said stock to be delivered by the party of the first part and accepted by the party of the second part, subject to the by-laws of the said Del Monte Irrigation Company."

In pursuance of this contract the plaintiff made the cash payment of one thousand dollars, and entered into possession of the land, which he proceeded to improve by the erection of buildings and the planting of fruit trees. He made no further payments of purchase money under the contract, but paid a portion of the accruing interest and paid all the taxes.

In December, 1892, the supreme court of the United States decided the cases entitled *United States v. Colton Marble and Lime Co.*, and *United States v. Southern Pacific R. R. Co.*, 146 U. S. 615, and also two other cases entitled *United States v. Southern Pacific R. R. Co.*, 146 U. S. 570. These were appeals from the circuit court in several cases involving different phases of the litigation concerning the patents which had been issued to the Southern Pacific Railroad Company for lands within the limits of the grant to the Atlantic and Pacific Railroad Company, and by the judgment of the supreme court the decrees of the circuit court were reversed and the causes remanded, with directions to enter decrees in favor of the United States, vacating and canceling the patents. These decisions were brought to the attention of the plaintiff in the early part of the year 1893, and he then learned for the first time that the title to the lands contracted for was not in the defendant. From that time forward, however, he had actual and full knowledge of all the facts and of the law affecting defendant's rights in said lands, and his own rights under the contract of purchase. He did not during the year 1893 take any steps looking to a rescission of his contract. In fact, it appears that he was at that time satisfied, as a lawyer, that although the title was not then in the defendant, it was, nevertheless, practically certain that under the provisions of the act of 1887 above referred to a new patent for the land would be issued direct to the defendant upon proof of its purchase from the railroad

company upon the faith of the invalid patent of 1879. There is uncontradicted evidence that he so advised a client who consulted him professionally as to the title of defendant to another subdivision of the same section of land prior to the month of April, 1893. In January, 1894, when the final payment under his contract fell due, plaintiff made a formal offer to complete the payment upon conveyance of a good title to the land and water stock. But he knew at the time he made this offer that its condition could not be complied with, and his only object seems to have been to demonstrate his readiness to perform when defendant was able to perform on its part. The result of this offer and the ensuing discussion of the defect in the title to the land was a promise and assurance on the part of the defendant that it would make the necessary proofs as soon as the land office was ready to receive them, and would procure a patent direct from the United States under the act of 1887. Resting upon this promise, plaintiff remained in possession of the land, cultivating and caring for the fruit trees he had planted until the summer of 1896.

During the whole period of his occupancy of the land down to and including the irrigating season of 1895 the plaintiff received from the Del Monte Irrigation Company the full quantity of water mentioned in his contract, but in the year 1896, owing to the failure of the artesian wells which constituted its source of supply, the irrigation company was not able to furnish to its stockholders quite one-fourth of the quantity of water represented by its stock; that is to say, there were twenty-one thousand shares of stock issued, and in order to supply one inch of water of every one hundred shares it required a flow of two hundred and ten inches from its wells, which in August, 1896, were yielding only about forty inches, to which something seems to have been added by pumping. In order to secure a better supply of water the irrigation company levied an assessment of eight cents a share on its stock, and the defendant notified the plaintiff that he must pay the assessment on the two hundred and three and two-tenths shares which it had contracted to him, or be deprived of water for irrigation. He refused to pay the assessment, and at this juncture, on August 5th, and again on August 19, 1896, renewed his demand for a deed of convey-

ance of the land and his offer to perform on his part. This, however, like his first offer, was merely formal, for he knew that the defendant had not yet received a patent, and he had no intention of accepting its deed or parting with the money which he tendered. The defendant being unable to comply with the conditions of his offer, he gave notice that he rescinded the contract, and offered to reconvey everything he had received and to restore the possession of the land upon the condition that the defendant would refund the moneys paid in pursuance of the contract, and compensate him for the value of his improvements, with interest. His offer being declined, plaintiff commenced this action in August, 1896, which resulted in a judgment in his favor for the amount of his payments under the contract, and the value of his improvements, fixed at the sum of six thousand two hundred and fifty dollars, together with interest and costs. The whole amount of the judgment was declared to be a lien upon the land and water stock, which were ordered sold and the proceeds applied upon the judgment, with judgment over for any deficiency, etc.

On this appeal of the defendant from the order overruling its motion for a new trial we have to consider only the assignments of error in the rulings of the superior court at the trial, and the specifications of insufficiency of the evidence to justify the findings.

With regard to these specifications the respondent makes the objection that they are not sufficient in substance or proper in form, and to this point cites the case of *De Molera v. Martin*, 120 Cal. 544. But the decision in that case has no application to the specifications here, which are as exact and detailed as they could be made in pointing out the particular findings and parts of findings which it is claimed the evidence does not justify. The language of many of these specifications is: "There is no evidence to justify; . . . . there is no evidence to prove or tending to prove," etc., and it seems to be claimed that this is not a compliance with the statute which requires a statement of the particulars in which the evidence is insufficient. This objection is too refined. If there is no evidence to support a finding, it is certainly proper to say so, and even where there is slight but insufficient evidence to support a particular

finding every purpose of the law is answered by a specification that there is no evidence.

It is first objected that there is no evidence to justify the finding to the effect that the defendant corporation, before the execution of the application and contract, as an inducement to plaintiff to purchase the land and water stock, represented that it had a perfect title to the land, and that the right to a perpetual flow of one inch of water to each ten acres of land was sold therewith. We think the evidence fully sustains this finding. The representations were made, but they were honestly made. The officers and agents of the corporation had every reason to believe at the date of the contract that its title to the land was perfect. It had been sustained by the decision of the circuit court, and even if that decision was erroneous, as was afterward decided by the supreme court, the equitable claim of the defendant to the land was protected by the act of Congress of 1887. As to the water, all that was represented was true, as the defendant could see for himself. There was then an ample supply of water, and continued to be for five years after the date of the contract, when for the first time the artesian wells, which were the source of supply, began to fail. If there was any assertion or prediction by the defendant's agents that the wells would always yield as abundantly as they were then yielding, this was but an expression of opinion upon a matter as to which plaintiff was as fully informed as they were. What effect this finding is to have will be further considered, but the finding itself cannot be set aside for lack of evidence to support it.

There is also evidence sufficient to justify that portion of the fifth finding wherein it is found that the plaintiff had no knowledge of the title to said lands or the amount of water represented by said stock except as he was informed of the same by the defendant, and that the purchase was induced by the representations. The plaintiff testifies to these facts, and his evidence is sufficient to sustain the findings. Indeed, the argument of appellant in support of his specification against this finding is not that the plaintiff had actual knowledge as to the title and water when he entered into the contract, but that his ignorance was inexcusable. It is true, as contended by appel-

lant, that all the information it had as to its title was contained in acts of Congress and public records of the courts and land department, and that the plaintiff, by exploring these sources of information, might have learned all that it knew, but this is quite consistent with the fact found that he was actually ignorant of the state of the title, and relied upon the representations of the defendant. As to the water, his ignorance of the facts is of no consequence, since, as has been seen, no representations were made that were not true.

The seventh finding as to the fact that plaintiff made all his improvements on the land before he had any actual knowledge of the defect in the title is also supported by the evidence, and there is sufficient evidence to sustain the finding that the land was enhanced in value by plaintiff's improvements to the extent of six thousand two hundred and fifty dollars. The evidence was that the improvements, consisting of dwelling, outhouses, flume, and fruit trees, all suitable to the character of the premises, had been appraised at that sum by appraisers, agreed upon by the parties, and while it is true that it does not necessarily follow that the value of the land was enhanced in the same amount as the value of the improvements, the inference was one which, in the absence of other evidence, the court might fairly draw. The evidence, in other words, was sufficient *prima facie* to sustain the conclusion. A further objection made by appellant to this finding is that the evidence which supports it was absolutely inadmissible, not only because it was irrelevant, but because the plaintiff was not entitled to recover the value of the improvements. It has been said by this court in one or two cases that the vendee of land going into possession under his contract of purchase, and upon representations of the vendor that he has the title, may, upon failure of the title, recover the value of improvements made *bona fide* while in possession. (*Gates v. McLean,* 70 Cal. 50; *Worley v. Nethercott,* 91 Cal. 517.[6]) It is contended that the expressions upon this point in those cases were mere dicta, and it may be doubted whether the doctrine is authoritatively settled in this state, but in this case we cannot decide the question and it would be a waste of time to consider it. It was purely and

[6] 25 Am. St. Rep. 209.

simply a conclusion of law that the plaintiff was entitled to recover the value of his improvements, and upon this appeal the conclusions of law are not reviewable. The ninth finding is to the effect that the plaintiff has regularly paid all taxes, assessments, and water rates that have been levied or assessed upon said land and improvements for the period of five years from the execution of the contract, etc. This finding, according to its literal terms, is fully supported by the evidence, but more than five years elapsed after the execution of the contract before the levying of the assessment on the water stock sold to plaintiff along with the land, and defendant claims that the refusal of plaintiff to pay that assessment was a breach of his contract. This contention the superior court disposed of in its conclusions of law, where it was held that plaintiff was not liable under his contract for that assessment. Whether this conclusion was correct may call for further consideration, but the finding here in question has no reference to that assessment, and as to other taxes, etc., it is correct.

The tenth and eleventh findings of fact set forth the chain of defendant's title to the land and the latter concludes as follows: "That defendant Pomona Land and Water Company's only right or title to said lands is that derived under the chain of title above set forth considered in connection with such remedial legislation as may be found in any act of Congress applicable to the said chain of title. That by reason of the facts last hereinbefore set forth as to the defective character of the title attempted to be conveyed to plaintiff, plaintiff has been greatly damaged."

No part of these findings is called in question except the last sentence above quoted, which embodies the conclusion that by reason of the facts recited the plaintiff has been greatly damaged. As to this the respondent contends that it is a misplaced conclusion of law, and cannot be reviewed on this appeal, but we agree with the appellant that it embraces a finding upon a vital issue of fact, viz., whether there was such a defect in the title as justified the plaintiff in rescinding the contract of sale at the time and under the circumstances of the alleged rescission. The finding was material in no other aspect, and in that aspect it was material, for it could not be established either as

a conclusion of fact or of law that the contract had been re-
scinded for failure of title to the land without a finding that
the title was so defective that the plaintiff could not be re-
quired to accept it.

As to this matter it may be conceded that the title which
the defendant had on the 14th of January, 1894, the date at
which its conveyance was due, was not such a title as the plain-
tiff was bound to accept. The defect, it is true, was curable
under the act of 1887, but it had not been cured and the de-
fendant never, down to the trial of the action, had been able to
cure it under that act, for the reason, apparently, that the land
office would not receive its proofs of citizenship and *bona fide*
purchase until the patent to the railroad company had been
vacated, and the suit to vacate the patent was still undecided.

If, therefore, the plaintiff had elected to rescind at that time,
his right so to do would probably have been clear. But he did
not elect to rescind at that time. Instead of rescinding he
accepted the promise of the defendant to cure the defect in its
title, and rested upon it for two years and a half before taking
any further action. For this, of course, he was in nowise to
blame. He had a right to accept and rely upon the promise of
defendant to perfect its title, and in the meantime to hold his
right of rescission in reserve to be exercised, when, after a rea-
sonable opportunity so to do, the defendant had failed or re-
fused to redeem its promise. For while it is true that the right
to rescind must be exercised promptly and is lost by delay, it is
equally true that it does not lie in the mouth of a delinquent
party to object to a delay which has been granted at his in-
stance in order to enable him to perform an agreement which
he is unable to perform at the time stipulated. On the other
hand, it seems to follow that when, in consequence of some
promise of the delinquent party, rescission has been delayed
beyond the proper time, the right to rescind will not be revived
until a reasonable opportunity has been afforded for compliance
with such promise, unless it is by its terms to be performed
within a certain time. And so the real question to be decided
in this connection, and the main question in the case, is whether
the defendant did unreasonably delay the proceedings to per-
fect its title.

The actual delay was no doubt unusual in the matter of perfecting a title, but whether it was unreasonable or injurious to the plaintiff depends upon the ability of the defendant to proceed and the situation in which the plaintiff was left pending the delay. As to this it seems to be conceded that the defendant was prevented from making its proofs under the act of 1887 by a regulation of the land department that such proofs would not be received in any case until the patent to the railroad company had been canceled, and the patent embracing this particular land had not been canceled at the date of the alleged rescission. As to the terms of the regulation respecting the time of making these proofs there is no direct evidence in the record, but since the act of Congress authorized the department to make rules on the subject we must take judicial notice of such rules as were made, and since the statement of counsel for appellant as to the substance of the regulation is not controverted by the respondent, we assume the fact to be as above stated. The defendant, therefore, not being a party to the suit involving the patent to this section, and having no power to expedite a decision—if, indeed, any person could have brought the litigation to an earlier conclusion—cannot be blamed for failing to procure a patent under the act of 1887, prior to the attempted rescission. But another and more liberal act of Congress was passed in March, 1896, under which, as plaintiff contends, the defendant might have proceeded without delay to get its patent, and he justifies his determination to rescind in August, 1896, upon the ground that the defendant had taken no steps under the later act. It does not appear, however, that either of the parties was advised at that time that the obtaining of a patent in this case could be hastened by a proceeding under the new law, and there is no evidence of any request or suggestion from the plaintiff that the defendant should take any different course from that previously agreed upon, viz., that it should keep track of the proceeding in court and make its proofs under the act of 1887 as soon as notice should be given that the land office was ready to receive them. We think that if plaintiff desired a different or more expeditious procedure he should have notified defendant and given it a reasonable opportunity to conform to his wishes before declaring a

rescission of the contract on this ground.   As to any injury to plaintiff occasioned by the delay the record is silent.   There is no evidence that he was damaged in any way.   He was living upon the land; he was practically certain of securing the title in due course of proceedings under the law, and secure against any disturbance of his possession meanwhile.   It is true, as suggested, that he might not have been able to sell the property so readily as he would have been if the title had been perfected, but there is no evidence that he desired to sell, and in a case of this complexion, in which the incidents of rescission have been complicated by the taking of possession and the making of improvements, we think something more is required to justify the course taken by plaintiff than the mere speculative injury involved in the surmise that the state of the title might have prevented a sale if he had desired to sell.   Our conclusion upon this point is that the defect in the title to the land was not such a damage to plaintiff as to justify a rescission at the time plaintiff undertook to exercise the right, and that the finding of such damage is not sustained by the evidence.

As this finding is the principal basis of the conclusions and decree of the superior court, it is perhaps not strictly necessary that we should notice other points discussed by counsel, but we will briefly state our conclusions upon one or two propositions affecting the rights of the parties.

We think there is no foundation for any charge of fraudulent representations inducing the execution of this contract. The representations as to the water were true, and that respecting the title was based upon a state of facts which at the time fully justified the claim of a perfect title.   Besides, if the plaintiff intended to rely upon misrepresentation as to the title, he should have rescinded as soon as he discovered the fact, and since he did not then rescind he waived the right to do so to the same extent at least that he waived his right to rescind for the actual defect of title of which he complains.   Whether or not in the final adjustment of this controversy it may be held that the plaintiff can claim or recoup damages for any actual failure of the supply of water which his stock purported to represent—a point as to which we express no opinion—it is certain that the failure which occurred was not a cause for re-

scission.   If this part of the consideration for plaintiff's obligation failed in any degree, the failure was due to no fault of the defendant, and so was not a ground of rescission.   (Civ. Code, sec. 1689, subd. 2.)

As to the assessment levied upon the stock of the Del Monte Irrigation Company in August, 1896, we think by a fair construction of the contract it was payable by the plaintiff.   He agreed in consideration of the right to occupy the land pending the fulfillment of the contract to "pay and discharge all taxes, assessments, and water rates" that might be levied or assessed "on the premises."   The stock was sold with the land under a rule apportioning ten shares of stock to each acre of land, and they were so inseparably related under the contract that an assessment upon the stock to carry out the purposes of the irrigation company was within the meaning of the contract a water rate assessed upon the premises.

The order denying a new trial is reversed.

McFarland, J., Henshaw, J., and Van Dyke, J., concurred.

On the 14th of March, 1901, the following additional opinion was rendered in response to a petition for rehearing:

BEATTY, C. J.—In his petition for a rehearing respondent insists that although he may have had no right to rescind by reason of the delay in perfecting the title to the land, he did have a clear right to rescind on account of the failure of the water supply—and he claims that he had this right under subdivision 4 of section 1689 of the Civil Code, notwithstanding the absence of any bad faith or fault on the part of the defendant.

It is true that under that provision of the code a party to a contract may rescind if the consideration before it is rendered to him fails in a material respect, from any cause.   But does that provision apply to the kind of rescission decreed in this case?   The respondent never offered to rescind except upon condition that he should be paid for his improvements, and such was the decree.   The offer and the decree were, as we understand, alike based upon some imputation of actual or constructive fraud on the part of the defendant in contracting to convey land to which it had no title.

Eliminate this feature of the case and how does it stand? The plaintiff was to have, along with the land, certain shares of stock in an irrigation company representing two and thirty-two thousandths inches of water. He knew what the company was, what its supply of water was, and what was the source of supply. When he commenced his improvements he knew as well as the defendant could have known whether the supply would be permanent. There was no guaranty that it should be permanent, and no such representation, or, if there was, it was a mere expression of opinion. The plaintiff then made permanent improvements, because of his own belief that the water supply would not fail. If there had been no difficulty about the title and the payments had been completed, and the conveyance made in January, 1894, as the contract provided, the defendant would have got all he contracted for on his own construction of the agreement as to the water stock, but when the water failed in 1896 he would have had no right to rescind with or without compensation for his improvement, and we see no reason why in the case as it is he should be allowed to throw upon the defendant the unfortunate consequences of his own mistaken judgment in a matter as to which he was uninfluenced by any fraud, actual or constructive, of the defendant.

Rehearing denied.

Henshaw, J., Van Dyke, J., McFarland, J., and Garoutte, J., concurred.