[No. 9213.  Department One.  April 13, 1911.]

CHARLES A. SKOOG, *Respondent*, v. COLUMBIA CANAL
COMPANY, *Appellant*.[1]

VENDOR AND PURCHASER—CONTRACT—RESCISSION BY VENDEE. Where the contract for the sale of land did not fix any specific time for delivery of the conveyance, contemplating that the vendor should have a reasonable time therefor, the vendee cannot peremptorily rescind for failure to furnish the deed and recover the purchase money paid without giving notice of his intention to rescind and a reasonable opportunity for the vendor to perform; and a mere demand for a deed is not sufficient.

SAME—DELAY IN PERFORMANCE BY VENDOR—REASONABLENESS. Where lots were sold by an irrigation company and fully paid for November 23, 1908, with the understanding that the company was to have a reasonable time to deliver the conveyance with abstract showing good title, and the vendee went into possession and made no de-

[1]Reported in 114 Pac. 1034.

mand for a deed until July 23, 1909, a delay until September 28th is not so unreasonable as to permit the vendee at that time to peremptorily rescind the contract, without giving notice of any intention to do so (DUNBAR, C. J., and GOSE, J., dissenting).

SAME—TENDER OF DEED—TIME FOR PERFORMANCE. Where a contract for the purchase of land contemplated that the vendor was to have a reasonable time to deliver the deed, and the vendee gave peremptory notice of rescission on the day before action brought, and took the attitude that no tender thereafter would avail, a tender of a deed by bringing the same into court is timely.

MORTGAGES — RELEASE — EFFECT OF PARTIAL RELEASE — WATER RIGHTS. Where an irrigation company gave a blanket mortgage on certain lands and all of its water rights and privileges, the release of certain lots not covered by the mortgage has the effect of discharging from the lien of the mortgage the water rights that go with the lots, there having been no need of releasing the lots except in so far as lots carried with it the title to the water rights.

MORTGAGES—LANDS CONVEYED—EXCEPTIONS. A mortgage upon the lands and water rights of an irrigation company "excepting therefrom such rights as have heretofore been sold or contracted to be sold" by the company is not a lien upon lots and water rights contracted for several months before the execution of the mortgage.

TRIAL—FINDINGS—SPECIAL VERDICT—QUESTIONS OF LAW. Where objection to title, evidenced by an abstract, involves only the question of the lien of mortgages, as appears from their face, a question of law is presented, and the advisory verdict of a jury is no proper guide to the decision.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered June 27, 1910, in favor of the plaintiff, after a trial before the court and a jury, in an action on contract. Reversed.

*Shank & Smith* and *Pedigo & Smith*, for appellant.

*Rader & Barker* and *H. B. Noland*, for respondent.

PARKER, J.—The plaintiff commenced this action to recover from the defendant the purchase price of certain land in Walla Walla county, and the value of the improvements placed thereon by him, which land he went into the possession of under a contract with the defendant for the purchase thereof. He claims the right to rescind the contract because

of the failure of the defendant to convey to him the title to the land as agreed by the terms of the contract. The cause was tried as a suit in equity, though the court submitted special interrogatories to a jury for an advisory special verdict. The trial court adjudged that the contract was rightfully rescinded by the plaintiff, and rendered judgment in his favor and against the defendant for $5,155.11. From this disposition of the cause, the defendant has appealed.

In the year 1905, appellant was organized as a corporation under the laws of this state, its declared objects, among others, being to acquire water and water rights for the purpose of irrigation and water power, and "particularly to appropriate water for irrigation and power from the Walla Walla river. . . . ;" also to buy, sell, improve and deal in real property. In the year 1906, its president entered into a contract with the state of Washington for the purchase of a portion of section 16, township 7, N. R. 31 East. This land is near the town of Attalia and not far from the confluence of the Walla Walla and Columbia rivers, and is capable of irrigation from the Walla Walla river. The purchase price under this contract was payable in annual installments at the option of the purchaser, the last installment being due in 1915. While this contract was executed in the name of appellant's president, he held the same in trust for appellant; so, for the purpose of our present inquiry, we will treat the contract as appellant's property. It was thereafter assigned to appellant by its president, and thereafter a deed was issued for the land to appellant by the state of Washington. Appellant contemplated platting this land into small tracts to be called "Attalia five acre tracts," and it was thereafter officially so platted, the plat being executed before the commencement of this action, and filed with the county auditor soon after the commencement of this action. A preliminary plat had been prepared for the purpose of selling the tracts, prior to November, 1908, and the land had been placed in the hands of the Attalia

Development Company by appellant for sale according to the plat.

On November 23, 1908, that company entered into a contract with respondent for the sale of lots 97 and 112 of the plat, which description corresponded with the N. E. ¼ of the S. E. ¼ of the S. E. ¼ of section 16, containing ten acres, excepting roads along the north and east lines thereof. While this contract was executed by the Attalia Development Company and respondent, we think it was in effect the contract of the appellant as well, as we will later see. This contract was upon a printed form adapted to a contract of sale wherein the payment of the purchase price is to be paid in installments, and contained a provision that, upon the completion of the payments, the company will furnish the purchaser an abstract of title to the land showing unencumbered and marketable title, and convey the same to him by warranty deed. The total purchase price under this contract was $3,500, and was paid in full by the conveyance of certain land in Minnesota belonging to respondent, so that he would be entitled to a deed for the land described in the contract immediately, if the language of the contract be taken literally. It is plain, however, from circumstances surrounding the transaction and the fact that the contract was then taken instead of a deed, that the company was to have a reasonable time to furnish the deed. It is also apparent that it was understood that such deed would not be furnished until some time in the spring of 1909, though no certain time was fixed. Respondent and his wife entered into possession of the land, which was then in a wild and uncultivated state, and remained in possession until after the commencement of this action in September, 1909. During this period they cultivated the land, planted fruit trees, and built a dwelling thereon. They also irrigated the land by water furnished in compliance with the contract.

Early in the summer of 1909 respondent made inquiry about getting his deed, when he was informed, in substance, that the company was not yet ready to give a deed. He there-

after asked to have his contract exchanged for one made by the appellant, evidently having learned that appellant was the company from which his title was eventually to come. In compliance with this request, on July 23, 1909, appellant and respondent entered into a contract which was, in substance, the same as his contract with the Attalia Development Company. At this time he demanded a deed, but was again informed, in substance, that the company was not yet ready to give a deed, its officers then making some excuse to the effect that its plat and abstract were not yet ready. While this contract in its printed portion contained substantially the same provision as to the time for giving a deed, it is plain that the parties thereto contemplated further time for the giving of such deed, though no time was fixed therefor. Among the interrogatories asked of, and answered by, the jury were the following:

"Interrogatory (6). Did the plaintiff, after paying the purchase price of said land or after transferring to said company his interest in said Minnesota land, demand of said company an abstract of title of said land and a deed thereof? If not, did he do so at any time, and if so, when? Answer— Demanded deed July 23 and August 7, 1909."

"Interrogatory (19). Did the plaintiff, before the commencement of this action, notify the defendant, that, unless it furnished him a deed and abstract of title of said land, he would rescind his contract to purchase said land, and demand a return from it of the money paid by him to it, and payment of all damages by him sustained on account of its failure so to do? If, so, when did he do that? Answer—August 7, 1909, demanded deed or money."

"Interrogatory (20). Did plaintiff afterward offer to deliver to defendant his contract with it for the purchase of said land and the possession of said land and declare to it that he then rescinded said contract and tender said contract to it? If so, when did he do that? Answer—Yes, on September 27, 1909."

These interrogatories, and the answers made thereto by the jury, covered all the facts found upon the question of a de-

mand for a deed and rescission of the contract. No finding
was made indicating that there was any demand for a deed
coupled with a notice that if such deed was not given within
some specified time, or a reasonable time, that respondent
would rescind the contract. Interrogatory and answer No.
19 comes the nearest thereto of any finding made. On Sep-
tember 28th, the day following respondent's declared rescis-
sion, as found in interrogatory and answer No. 20, this action
was commenced by the service of a summons upon appellant
at Attalia. It was upon these findings, and others touching
the amount of money judgment respondent would be entitled
to if the contract had become effectually rescinded, that the
trial court rendered its judgment. The cause proceeded to
trial on April 19, 1910. In its answer appellant offers to
perform as follows:

"The defendant, since entering into said contract, has used
diligence and all the diligence contemplated by the parties
hereto towards perfecting its plat and title to said property,
and has now perfected its plat and title to the said property,
and can now convey to the said plaintiff a good fee simple title
to the same free from all incumbrances, except those arising
from the acts or omissions of the plaintiff; and the defend-
ant herewith tenders to the plaintiff a warranty deed in due
form conveying to the plaintiff such title, together with an
abstract of title as provided in the contract between the
parties."

Appellant produced a deed for the land to respondent, and
also an abstract showing the condition of the title to the land,
at the trial, and there tendered them to the respondent, which
tender was refused. These were left with the trial court for
respondent, and have been sent here with the record for our
inspection.

The first and principal question for our determination is,
Was the contract effectually rescinded by the respondent
prior to the commencement of this action in the superior court?
Since the circumstances under which this contract was entered
into plainly show that there was no specific time within the

contemplation of the parties when the deed was to be given to the respondent for the land, counsel for both parties, as we understand them, concede that appellant would have a reasonable time to give a deed and furnish the abstract as agreed. This, we think, renders it clear that the right of rescission in respondent, on account of nonperformance on the part of appellant, would not arise at any particular moment to be determined by what might be found to be a reasonable time following the making of the contract, and respondent then be enabled to peremptorily rescind the contract by informing appellant that he does so, without any previous notice or warning that he intends to rescind. The contention of counsel for respondent seems to be that, after a reasonable time for performance has expired after the making of the contract, respondent could peremptorily rescind the contract without giving appellant any previous notice or warning that he intended so to do. In other words, that respondent's rights in this respect would be the same after the expiration of a reasonable time for performance as if the time for performance had been fixed by the terms of the contract at a particular time and that time had expired. However peremptorily a party to a contract may rescind the same upon failure of performance by the other party, when a certain time is fixed for performance by the terms of the contract, the rule seems to be, that when the time for performance is not so fixed with certainty, the party seeking to rescind, upon the ground of nonperformance by the other party, must give notice to such party of his intention to rescind, and a reasonable time thereafter for performance by the other party.

In the case of *Walters v. Miller*, 10 Iowa 427, 429, the rule is stated as follows:

"In contracts for the sale of real estate, when the purchase money has been paid, but no deed executed, the purchaser will not be permitted to rescind the contract and recover back the purchase money, unless the vendor has been guilty of fraud in making the contract, or the vendor cannot or will not per-

form on his part, or unless there has been a voluntary rescission of the contract without default on either side.

"To rescind a contract the law requires some positive act, by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives him a reasonable time to comply."

In the case of *Owen v. Pomona Land & Water Co.*, 131 Cal. 530, 63 Pac. 850, 64 Pac. 253, we find a situation not materially different from this case, in so far as the principle involved is concerned. While the contract in that case seemed to fix a specific time for conveyance, the dealings between the parties thereafter showed that that part of the contract was waived, and therefore it became a question of reasonable time for performance. Touching the right of rescission under such circumstances, the court said:

"If therefore, the plaintiff had elected to rescind at that time, his right so to do would probably have been clear. But he did not elect to rescind at that time. Instead of rescinding, he accepted the promise of the defendant to cure the defect in its title, and rested upon it for two years and a half before taking any further action. For this, of course, he was in no wise° to blame. He had a right to accept and rely upon the promise of defendant to perfect its title, and in the meantime to hold his right of rescission in reserve, to be exercised when, after a reasonable opportunity so to do, the defendant had failed or refused to redeem its promise; for while it is true that the right to rescind must be exercised promptly and is lost by delay, it is equally true that it does not lie in the mouth of a delinquent party to object to a delay which has been granted at his instance in order to enable him to perform an agreement which he is unable to perform at the time stipulated. On the other hand, it seems to follow that when, in consequence of some promise of the delinquent party, rescission has been delayed beyond the proper time, the right to rescind will not be revived until a reasonable opportunity has been afforded for compliance with such promise, unless, it is by its terms to be performed within a certain time."

See, also, 2 Warvelle, Vendors (2d ed.), § 868.

We think it clear from this record that respondent was

bound to comply with this rule before he could render his at-
tempted rescission of the contract effectual. We have care-
fully read all of the evidence and are convinced that at no
time did respondent come nearer to meeting this requirement
than as stated in the special findings of the jury above
quoted. The 6th interrogatory and answer finds nothing
but demands for deed on July 23d and August 7th. There
was then no indication of an intention on the part of respond-
ent to rescind the contract for a failure to comply with those
demands. The 19th interrogatory and answer finds nothing
but a demand for "deed or money." The 20th interrogatory
and answer finds that respondent peremptorily declared a
rescission of the contract on September 27th, the day before
he commenced this action. It is evident that he did not then
intend to give any time for complying with the contract by
appellant. We think these findings are as favorable to re-
spondent as the evidence will warrant. It is clear that at no
time prior to September 27th did respondent indicate any in-
tention to rescind the contract as a result of appellant's failure
to give him the deed and abstract. The demands prior to that
time did not evidence an intention on the part of respondent
to rescind, any more than they would evidence his intention
to enforce his rights by specific performance; and we have
seen that the peremptory rescission made on September 27th
gave no time whatever for performance. We are of the opin-
ion that, at the time the suit was commenced on September
28th, the contract had not been effectually rescinded.

What has been said thus far would seem to entirely dispose
of the case, but counsel for both parties have submitted to us
the question of whether or not the deed and abstract tendered
by appellant to respondent during the trial is a compliance
with the terms of the contract on the part of appellant. In
view of appellant's tender in his answer, the respondent's at-
titude in the case indicating that he would not entertain any
tender, and the actual production of the deed and abstract at
the trial and leaving them with the court for respondent, we

deem it unnecessary to go into the question of whether or not such tender was made within a reasonable time after he attempted rescission on September 27th. We think that in any event the tender was sufficient as to time, in view of the position respondent was taking, which was in effect that no tender after September 27th could avail appellant anything. The only objection to this tender, other than as to the time of making it, is that the title to the land and the water rights in connection therewith agreed to be conveyed by the contract are encumbered. Our attention is directed to a mortgage for $75,000 given by appellant in the year 1905, covering certain lands belonging to it, but not this land, and all of its water rights. The lots here involved were released from the lien of this mortgage. It is contended that since this release only purports to discharge the lien of the mortgage upon the lots here involved, describing them by number, that the lien is not thereby released upon the water rights which go with the lots. We are not able to adopt this view. This was apparently a blanket mortgage covering a great deal of land belonging to appellant and all of its water rights. The concluding words of the description being:

"It being the intention hereby to mortgage all the existing property and property rights and privileges whatever belonging to and all those to be hereafter acquired by the first party, including all water rights and privileges."

There was no need of releasing the mortgage lien from the lots except in so far as the title to those lots carried with it the water right. We think that was the purpose of that release. We realize that we cannot decide this question finally as against the mortgagee. We must nevertheless decide it upon the facts presented, and upon these facts we are of the opinion that the mortgage lien is by this release discharged as to the water rights going with these lots. Our attention is also directed to a mortgage for $150,000 upon lands and water rights of appellant executed in December, 1909, which it is claimed is a lien upon the water rights going with these

lots.  But we find in that mortgage, following the description of the water rights mortgaged, the following: "Excepting therefrom such rights as have heretofore been sold or contracted to be sold by the Canal Company."  These lots and the water rights going with them were contracted for on July 23, 1909, several months before the execution of this mortgage.  The mortgage is apparently not a lien upon these water rights.  We have not overlooked the finding of the jury in its answer to interrogatory No. 17, to the effect that the appellant is not now able to convey good title to the land. Aside from the fact that this finding is merely advisory, it is only an attempted decision by the jury of a question of law.

As we have seen, the objection to the title, as evidenced by the abstract, involves only the question of the lien of these mortgages upon the water rights going with the lots.  This presents only a question of law to be determined by a construction of the release of the first mortgage, and the terms of the second.  The jury's finding is no guide to a proper decision of these questions.  The evidence in this case clearly shows that the only possible right of rescission respondent could have would be because of appellant's failure to furnish the deed and abstract before the commencement of the action. Respondent's possession and enjoyment of the premises have, at no time since he first went into possession thereof, been in the least disturbed.  There is some evidence tending to show that respondent had a desire to sell the premises, and that for that reason he wanted his paper title perfected.  It does not appear, however, that he had any prospective sale in view which was interfered with by the possibility of his inability to give good title.  The delay may have been a technical violation of respondent's right, but the evidence does not show that it caused him any actual damage.

We cannot escape the conclusion that the learned trial court was in error in rendering its decision, and the same is therefore reversed.

FULLERTON and MOUNT, JJ., concur.

GOSE, J. (dissenting)—In view of the two demands for a deed and the unreasonable delay of the appellant in executing it, I think the respondent had a clear right in equity to rescind. I therefore dissent.

DUNBAR, C. J., concurs with GOSE, J.