[No. 24599. Department Two. December 21, 1933.]

ARTHUR T. KARR *et al., Appellants,* v. W. G. McAVOY
*et al., Respondents.*[1]

*Hugo F. Luhman, Chadwick & Chadwick, Cherry & Hull,* and *I. J. Bounds,* for appellants.

*Revelle, Simon & Coles,* and *John W. Day,* for respondents.

GERAGHTY, J.—Plaintiff Arthur T. Karr, on February 13, 1923, purchased, under an executory contract, a twenty-five acre pear orchard in the Yakima valley, together with certain farm equipment. Title to the land and equipment was acquired by defendant W. G. McAvoy in October, 1923, subject to plaintiff's con-

[1]Reported in 28 P. (2d) 118.

tract, which was also assigned to defendant. The purchase price of the property was $36,790. Of this sum, $9,500 was paid in cash, an outstanding mortgage for $5,200 was assumed by plaintiff, and the balance was payable in installments, with interest at six per cent per annum. The contract contained the following provision:

"It is further understood and agreed that when $17,500 of said purchase price of $36,790 has been paid as herein provided, the party of the first part, her heirs or assigns, agree to give a good and sufficient warranty deed to said real property and a bill of sale of said personal property to the party of the second part, his heirs or assigns, said warranty deed to be subject to any and all liens or encumbrances suffered by, through or under the party of the second part, from the date hereof, and to be subject also to the aforementioned mortgage of $5,200 and to take back a mortgage for the then unpaid balance of the purchase price, the same to conform with the contract payments and interest rates herein, and shall thereupon furnish to the party of the second part, a good and sufficient abstract of title, showing merchantable title in the party of the first part, subject to the above mentioned exceptions, reservations and encumbrances."

While the wives of plaintiff and defendant are parties to the action, for convenience we will refer to the parties throughout in the singular.

In August, 1929, plaintiff, having paid more than $17,500 of the purchase price, made demand upon defendant for a deed and bill of sale, in accordance with the terms of the agreement, offering, on his part, to comply by giving a real estate and chattel mortgage securing the remainder of the purchase price. Defendant refused to give the deed, and plaintiff instituted a suit to enforce specific performance. At that time, the unpaid balance of the purchase price was $15,500, and,

under the terms of the contract, the whole of this sum was due March 1, 1930.

At the time plaintiff demanded a deed, he also made an effort to secure an extension of time for payment of the balance of the purchase price. In October, 1929, plaintiff and defendant executed a supplemental agreement, under the terms of which the time for making payment was extended for three years; appellant paying $150 for the extension and agreeing to pay ten per cent interest, instead of six.

It appears that nothing further was done in the action for specific performance. The extension agreement provided:

"Except as herein modified, said executory contract of sale shall be and remain as the contract of the parties."

Subsequent to the extension agreement, plaintiff carried out its terms, without making any further demand upon defendant for a deed until January 11, 1932. It appears, however, that plaintiff, in February, 1931, requested an extension of time on an installment of one thousand dollars, falling due March 1st. On January 11, 1932, plaintiff saw defendant at his office in Seattle, and made demand upon him for a deed. He testified that he tendered defendant real estate and chattel mortgages, which defendant declined to receive. Plaintiff then told him he would leave the papers at the office of his attorneys, Chadwick & Chadwick; that he hoped defendant would give his request further consideration; and that the papers would be available to him or his attorney at that place.

At the time of making the January 11th demand, plaintiff was in technical default on his contract, in that the last half of the current taxes had not been paid. Shortly thereafter, these taxes were paid, and on February 5th, accompanied by his attorney, Stephen F.

Chadwick, plaintiff visited defendant at his office and again made demand upon him for a deed, and was again refused, defendant saying: "Absolutely, I won't consider it. This matter was all settled at the time of the extension." Plaintiff then said: "There is only one alternative for me, and that is to tender you quit claim deed and bill of sale and ask my money back," to which defendant replied: "I won't do that; I can't do that." On being asked whether he wanted to consider the form of the deed and bill of sale, defendant said: "Absolutely not."

After this meeting with defendant, plaintiff and his attorney went immediately to the office of Chadwick & Chadwick, where a summons and complaint for rescission and the return of the moneys paid on account of the contract, as well as for moneys spent for improvements, had been prepared in advance. The complaint was immediately signed by plaintiff, and within an hour, as found by the court,—at any rate, within two hours—summons and complaint were served upon defendant.

Shortly after plaintiff and his attorney left his office, defendant made an effort to communicate with them. He called the office of Chadwick & Chadwick by telephone, but was unable to reach either of them. About half past eleven, Mr. Mills, an attorney in the office of Chadwick & Chadwick, appeared in defendant's place of business and served him with summons and complaint. Defendant testified that, upon calling the office of Chadwick & Chadwick by telephone and finding that they could not be reached, he inquired for someone else in charge of the office, and that Mr. Mills answered the telephone; that he told Mills he was ready to give a deed and to have plaintiff or Chadwick come to his office with the papers. Mills testified that defendant merely said that he wanted to consider the matter fur-

ther. Failing to reach either plaintiff or his attorney, defendant called upon his own attorney, Thomas Revelle, who, in turn, was unable to communicate with either of them, and, on the afternoon of the same day, wrote a letter addressed to Chadwick & Chadwick, which was delivered the next day, advising that his client was prepared to deliver deed.

No findings of fact were made by the court, but the trial judge orally expressed the opinion that, in the main, he was disposed to accept plaintiff's view as to what occurred in 1929, January 11 and February 5, 1932, but while holding this view, he still felt that the plaintiff should not prevail in the action; that, by his conduct subsequent to the execution of the extension agreement, if not expressly, he had at least tacitly waived his right to demand a deed without giving reasonable notice. The court thereupon entered judgment dismissing the action, from which the plaintiff appeals.

While the briefs of the parties cover a wide range, the issue in the case is to be determined by the legal effect of the transaction of February 5, 1932. We are clear that the execution of the extension agreement did not, of itself, abrogate the clause of the original contract requiring a deed on payment of the stipulated portion of the purchase price. Nor would the failure of appellant to demand a deed be, of itself, an abandonment of the right. It was a continuing right, to be exercised at the option of appellant. There was no stipulation as to time for delivery of the deed. While the contract recited that time was of its essence, and that any failure of the vendee, for the period of thirty days, to make the stipulated payments would entitle the vendor to cancel the contract, this stipulation could hardly be held applicable to the agreement to give a

deed. No time being specified, respondent would be entitled to a reasonable time in which to comply.

Conceding the stipulation for a deed to be a dependent covenant, so material as to entitle appellant to rescind for its breach, we think the course of dealing between the parties subsequent to the execution of the extension agreement was such that appellant could not rescind without giving respondent notice of his intention so to do and a reasonable time in which to perform. Even if the contract had definitely fixed the time of delivery, the appellant's inaction amounted to a waiver of time as essence of the agreement, and, under well recognized principles, he would be required to fix a new time for performance.

In *Skoog v. Columbia Canal Co.*, 63 Wash. 115, 114 Pac. 1034, the plaintiff, having paid the full purchase price of land bought upon contract, made demand for a deed, which was not complied with. While an equitable action, the court submitted certain interrogatories to a jury for an advisory special verdict. In answer to one interrogatory, the jury found that the plaintiff had demanded a deed on two several specific occasions. In answer to an interrogatory whether, before commencement of the action, the plaintiff notified the defendant that, unless it furnished him a deed and abstract of title, he would rescind his contract, and if so, when, the jury answered: "August 7, 1909, demanded deed or money." Commenting upon these findings, this court said:

"No finding was made indicating that there was any demand for a deed coupled with a notice that if such deed was not given within some specified time, or a reasonable time, that respondent would rescind the contract."

Then followed a discussion of the law applicable to that case, as we conceive it to be to this case:

"In the case of *Owen v. Pomona Land & Water Co.*, 131 Cal. 530, 63 Pac. 850, 64 Pac. 253, we find a situation not materially different from this case, in so far as the principle involved is concerned. While the contract in that case seemed to fix a specific time for conveyance, the dealings between the parties thereafter showed that that part of the contract was waived, and therefore it became a question of reasonable time for performance. Touching the right of rescission under such circumstances, the court said:

" 'If therefore, the plaintiff had elected to rescind at that time, his right so to do would probably have been clear. But he did not elect to rescind at that time. Instead of rescinding, he accepted the promise of the defendant to cure the defect in its title, and rested upon it for two years and a half before taking any further action. For this, of course, he was in no wise to blame. He had a right to accept and rely upon the promise of defendant to perfect its title, and in the meantime to hold his right of rescission in reserve, to be exercised when, after a reasonable opportunity so to do, the defendant had failed or refused to redeem its promise; for while it is true that the right to rescind must be exercised promptly and is lost by delay, it is equally true that it does not lie in the mouth of a delinquent party to object to a delay which has been granted at his instance in order to enable him to perform an agreement which he is unable to perform at the time stipulated. On the other hand, it seems to follow that when, in consequence of some promise of the delinquent party, rescission has been delayed beyond the proper time, the right to rescind will not be revived until a reasonable opportunity has been afforded for compliance with such promise, unless it is by its terms to be performed within a certain time.'

"See, also, 2 Warvelle, Vendors (2d ed.), § 868.

"We think it clear from this record that respondent was bound to comply with this rule before he could render his attempted rescission of the contract effectual. We have carefully read all of the evidence and are convinced that at no time did respondent come nearer to meeting this requirement than as stated in

the special findings of the jury above quoted. The 6th interrogatory and answer finds nothing but demands for deed on July 23d and August 7th. There was then no indication of an intention on the part of respondent to rescind the contract for a failure to comply with those demands. The 19th interrogatory and answer finds nothing but a demand for 'deed or money.' The 20th interrogatory and answer finds that respondent peremptorily declared a rescission of the contract on September 27th, the day before he commenced this action. It is evident that he did not then intend to give any time for complying with the contract by appellant. We think these findings are as favorable to respondent as the evidence will warrant. It is clear that at no time prior to September 27th did respondent indicate any intention to rescind the contract as a result of appellant's failure to give him the deed and abstract. The demands prior to that time did not evidence an intention on the part of respondent to rescind, any more than they would evidence his intention to enforce his rights by specific performance; and we have seen that the peremptory rescission made on September 27th gave no time whatever for performance. We are of the opinion that, at the time the suit was commenced on September 28th, the contract had not been effectually rescinded.''

To the same effect is the opinion in *Banning v. Commercial Orchards Co.,* 90 Wash. 554, 156 Pac. 547, written by Judge Chadwick:

''The trial judge found—and his findings are sustained by the evidence—that there was delay in the final payment by appellant which was waived by respondent; that at all times after the final payment and up to the commencement of this action, which was the first notice given by appellant of his intent to claim rescission, appellant had treated the property as his own, and had waived the stipulations making time of the essence of the agreement—that being the condition upon which he now relies; and that he could not maintain the action without first giving notice of his in-

tention to rescind and allowing reasonable time for compliance with the obligation to deliver an abstract and deed and offering to restore all moneys received from respondent as interest, or to give credit therefor and putting respondent in *statu quo* by a redelivery of the deed first executed which was then outstanding. Rescission is an equitable remedy, and one who seeks it must do equity. 2 Warvelle, Vendors, § 930; *Reidt v. Smith,* 75 Wash. 365, 134 Pac. 1057.

"The contract provided that the respondent

" ' . . . shall and will, upon the completion of the payments aforesaid, make, execute and deliver a good and sufficient deed conveying to said party of the second part a perfect title to the real property hereinabove described.'

"Where a specific time is not fixed for the delivery of a deed, the vendor shall have a reasonable time after payment to make and tender it. *Skoog v. Columbia Canal Co.,* 63 Wash. 115, 114 Pac. 1034.

"Or if the contract be treated as one fixing a definite time, appellant, by his delay and conduct with reference to the property, has waived the element of time and concurrent delivery of the deed, and must, if he would rescind, give notice of his intention to claim his equitable rights, that is, to rescind unless a deed is forthcoming within a reasonable time thereafter. *Owen v. Pomona Land & Water Co.,* 131 Cal. 530, 63 Pac. 850, 64 Pac. 253. See, also, on principle, *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500; *Watson v. White,* 152 Ill. 364, 38 N. E. 902."

Appellant's demand of February 5th was not aided by what took place January 11th. The appellant did not couple the demand made on this day with the notice that, unless deed was delivered by February 5th, or any other reasonable time, he would rescind the contract. He only told respondent, in effect, that he demanded a deed, and would leave the real estate and chattel mortgages with his attorney, and wished respondent to give the matter further consideration.

We are clearly of the opinion that appellant was not in position to come into a court of equity to enforce so harsh a remedy as rescission, and that the decision of the trial court, in so far as it denied the relief prayed for by appellant, was correct.

However, we think the situation in which an unqualified affirmance would leave the parties calls for a modification of the judgment of dismissal. This is an equitable action, triable here *de novo*. The appellants in their complaint prayed for "such other and further relief in the premises as may appear just and equitable to the court." The respondents in their answer tendered performance of the contract by delivery of deed and bill of sale, and it was shown by the testimony that they offered to perform immediately after the demand of February 5th. The record discloses that the balance of the purchase price was payable, by the terms of the contract, March 1, 1933. An unconditional affirmance of the judgment would leave appellants in a position where their contract would be forfeited for nonpayment upon thirty days notice, and without the right of redemption, to which they would have been entitled had deed been given.

We have reached the conclusion that the parties should equitably be placed as near as possible in the position they would be in had respondents' offer of performance been accepted by appellants when tendered. The case is remanded, with direction that the lower court enter judgment requiring the respondents to deliver to appellants deed and bill of sale, in accordance with the terms of the contract, within thirty days after receipt of the remittitur by the clerk of the lower court; that appellants deliver to respondents real estate and chattel mortgages securing payment of the balance of the purchase price; that the several instruments so to be delivered be dated as of February

5, 1932; and that, upon the exchange of instruments, as directed, the action be dismissed.

The respondents shall have their costs on appeal.

BEALS, C. J., TOLMAN, HOLCOMB, and BLAKE, JJ., concur.