[No. 10627.  *En Banc.*  April 4, 1913.]

GEORGE E. WRIGHT, *as Executor etc., Respondent,* v.
HENDRICK SUYDAM, *Appellant.*[1]

VENDOR AND PURCHASER—CONTRACTS—AGREEMENT TO PURCHASE OR
OPTION—CONSTRUCTION.   A contract acknowledging receipt of the
sum of $100 as part payment upon the purchase price of land, fol-
lowed by provisions contemplating the consummation of the sale,
and providing that the purchaser, if the title shall be found insuf-
ficient or unsatisfactory, may at his option have the sums paid re-
turned to him, is a contract for the sale and purchase of the land
and not an option, notwithstanding a provision that if the title is
not subject to objection and the purchaser fails to perform his part
of any of the terms of the contract, the sums paid shall be retained
by the owner as liquidated damages and the purchaser shall not be
under any further liability.

SPECIFIC PERFORMANCE—MUTUAL OBLIGATIONS—RIGHT TO RESCIND.
A contract for the sale of land is not so lacking in mutuality that the
law will not enforce specific performance, from the fact that it
provides that the purchaser may rescind in case the title is not
satisfactory to him, since he would be compelled to accept a market-
able title.

SAME—MUTUALITY OF OBLIGATION.   A contract for the sale of land
is not so lacking in mutuality that it cannot be specifically enforced

[1]Reported in 131 Pac. 239.

from the fact that the purchaser may satisfy all obligations on his part by forfeiting the sum of $100 paid as part of the purchase price, that being a sufficient consideration for the owner's obligation to convey.

SAME—MUTUALITY—SIGNATURE BY ONE PARTY. A contract signed by only one of the parties is not for that reason lacking in mutuality.

SAME—MUTUALITY OF REMEDY. Equity will not refuse specific performance of a contract for the sale of land because of the fact that a mutuality of remedies was not provided in the contract, where the contract was fully executed on the part of the plaintiff at the time of filing the bill.

VENDOR AND PURCHASER—CONTRACT—PERFORMANCE OR BREACH—TENDER. Where a contract for the sale of land made the payment of the balance of the purchase price and the execution of the conveyance mutual, concurrent, and dependent acts, a tender of the purchase price before demand and offer of a deed is in time, although after the time limited in the contract.

SPECIFIC PERFORMANCE—DEFENSES—TITLE OF VENDOR—VOLUNTARY DISQUALIFICATION TO PERFORM. It is not a defense to specific performance of a contract to convey land that the defendant voluntarily disqualified himself from vesting title by conveying the land to a third person, where the plaintiff is proceeding upon the theory that he is not disqualified and is willing to take a conveyance from the defendant in accordance with the terms of the contract.

ABATEMENT AND REVIVAL—ANOTHER ACTION PENDING—DISMISSAL OF FORMER ACTION WITHOUT PREJUDICE—EFFECT. A plea of another action pending cannot be sustained, where prior to the trial the former action had been dismissed without prejudice, although it was pending at the time of the commencement of the second action.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 29, 1912, upon findings in favor of the plaintiff, in an action for specific performance, after a trial to the court on the merits. Affirmed.

*John W. Roberts* and *C. J. France* (*Frederick Bausman*, of counsel), for appellant, contending, among other things, that the agreement was an option and not a contract to purchase lands, cited: 21 Am. & Eng. Ency. Law (2d ed.), 924; *Jones & Co. v. Eilenfeldt*, 28 Wash. 687, 69 Pac. 368; *Neeson v. Smith*, 47 Wash. 386, 92 Pac. 131; *Black v. Maddox*, 104 Ga. 157, 30 S. E. 723; *Indiana & A. Lum. Co. v. Pharr*, 82

Ark. 573, 102 S. W. 689; *Ide v. Leiser*, 10 Mont. 5, 24 Pac. 695, 24 Am. St. 17; *Delano v. Saylor* (Ky. Law), 113 S. W. 888; *Sandberg v. Light*, 55 Wash. 189, 104 Pac. 205; *Lawrence v. Pederson*, 34 Wash. 1, 74 Pac. 1011; *Milwaukee Mechanics' Ins. Co. v. Rhea & Son*, 123 Fed. 9; *McMillan v. Philadelphia Co.*, 159 Pa. St. 142, 28 Atl. 220; *Rude v. Levy*, 43 Colo. 482, 96 Pac. 560, 127 Am. St. 123, 24 L. R. A. (N. S.) 91; *Pollock v. Brookover*, 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 403.

*Wright, Kelleher & Caldwell* and *Edward W. Allen*, for respondent.

PARKER, J.—This action was commenced on May 16, 1910, by W. Hammond Wright against Hendrick Suydam, to enforce specific performance of the following written contract:

"Received of W. Hammond Wright the sum of one hundred dollars as part payment upon purchase price of the following described real estate with the appurtenances thereto, situate in King county, state of Washington, to wit: . . . the balance of the purchase price of the said premises is seventy-nine hundred dollars to be paid in cash, upon delivery of deed. The undersigned owners of said premises agree within fifty days to deliver to the purchaser an abstract of title prepared and certified by a reputable and approved abstract company, showing title to said property in said owners in fee simple free from all liens and encumbrances as herein stated, and good and marketable, and to convey such title to the purchaser, his heirs or assigns, by warranty deed prepared by the purchaser with full covenants satisfactory to the purchaser. If upon investigation title to the said premises shall be found to be insufficient in any of the respects aforesaid, either in fact or as shown in the abstract, or shall be unsatisfactory to the attorney for the purchaser, the purchaser may at any time thereafter at his option elect to have the sums of money theretofore paid by him as part payment of the purchase price, immediately repaid to him, and in the event of such election the owners shall return such sums and all further obligation upon their part shall then cease; provided, however, that such election cannot be exercised until after thirty

days after the objections to title are pointed out in writing
to the owners, which length of time is allowed to them to
remedy the same. If title to the said described premises shall
not be subject to objection in any of the respects aforesaid,
and shall be satisfactory to the attorney for the purchaser
and the purchaser shall fail upon his part to perform any of
the terms of this agreement, then the said sum of money first
above mentioned shall be retained by the undersigned owners
as liquidated damages, and they shall also be entitled to a
return to them of the said abstract, and neither party shall be
under any further liability. Deed is to be executed immedi-
ately upon examination of abstract, or within time allowed to
owners to cure objections. Purchaser is to have twenty days
after delivery of abstract within which to examine title. Time
is of the essence of each of the provisions of this agreement.
Dated at Seattle, Washington, this August 14, 1908.

"(Sig.) Hendrick Suydam, Owner."

The cause was tried and submitted to the court upon the
merits on October 25, 1910, when it was taken under advise-
ment by the court. Thereafter on May 26, 1911, W. Ham-
mond Wright died in King county, being then a resident
thereof, leaving a will wherein George E. Wright was named
as executor and trustee, and whereby the land here involved
was devised to him as such. Thereupon George E. Wright
as such executor and trustee was substituted as plaintiff. On
April 29, 1912, findings of fact and conclusions of law were
made and filed by the court in favor of the plaintiff and against
the defendant, and a decree rendered accordingly as prayed
for. From this disposition of the cause, the defendant has
appealed to this court.

The facts are in substance as follows: The contract above
quoted was entered into between Suydam and Wright on Au-
gust 14, 1908, the date it bears, and $100 then paid by
Wright to Suydam upon the purchase price of the land as
therein stated. At that time the legal title thereto was held
by the Stevenson-Sanders Land Company, a corporation, it
being about nine acres of a forty-acre tract owned by that
company. Suydam's interest in the land at that time was

under a contract for the purchase of the entire forty-acre tract, theretofore entered into by him with that company, upon which contract he had paid only a part of the purchase price. The nature of Suydam's interest in the land at that time became known to Wright a short time thereafter. The following, among other findings, were made by the court:

"On or about the fifth day of September, 1908, as provided in the said agreement, the defendant delivered the said abstract of title to the attorney for the said W. Hammond Wright, but before the time allowed by the said agreement for the examination thereof had elapsed, negotiations arose between the said W. Hammond Wright and the defendant with respect to a modification of the terms of the said agreement proposed for the purpose of accommodating the same to certain alleged defects in title, and thereupon the defendant by express language as well as by conduct, agreed that the time for the examination of the said abstract and for the performance of the terms of the said agreement by said W. Hammond Wright should be extended for a reasonable length of time. Thereafter, and before the expiration of such reasonable time, and while such negotiations were still in progress, and without any intimation of his desire to terminate them, the defendant went to the office of the attorney for the said W. Hammond Wright, during the attorney's absence, and withdrew the said abstract, and upon the nineteenth day of October, 1908, delivered the same to one William Pitt Trimble, with whom the defendant unbeknown to the said Wright, was then negotiating a sale of the said premises. The said William Pitt Trimble, with full knowledge of the said contract referred to in paragraph three preceding, purchased the said premises and at his request and as a part of the transaction in question, the defendant Suydam upon the twenty-fourth day of October, 1908, entered into a written contract to convey the said premises, together with other premises, to his mother-in-law, Catherine O. Denny, and upon the same day, and as a part of the same transaction, the said Catherine O. Denny assigned the contract last mentioned to the said William Pitt Trimble, and upon the sixteenth day of May, 1910, the defendant Suydam, pursuant to the said contract and assignment thereof, executed a warranty deed of the premises in question to the said William Pitt Trimble.

"Upon the twenty-second day of September, 1908, without informing him of his negotiations with the said Trimble, the defendant requested the said W. Hammond Wright to receive back the said deposit of one hundred dollars ($100) and to consider the said agreement of August 14, 1908, cancelled. This request the said W. Hammond Wright refused. At no previous time had the defendant signified an intention or desire to cancel the said agreement or to repay the said deposit money and at no time either before or after this date did the defendant tender performance of the terms of the said agreement set forth in paragraph three by him to be performed, or demand performance of the terms of the said agreement to be performed by the said W. Hammond Wright."

On September 26, 1908, Wright commenced an action in the superior court for King county against Suydam and the Stevenson-Sanders Land Company, seeking specific performance of the contract, and filed notice of the pendency thereof in the office of the auditor of King county. A trial of that action in the superior court resulted in judgment in favor of Suydam, denying the relief prayed for. Appeal was thereupon taken by Wright from that judgment, which was thereafter affirmed by this court. Upon petition for rehearing, this court modified its decision of affirmance, to the extent of directing the superior court to vacate its judgment, and in lieu thereof enter a judgment dismissing the action without prejudice to the right of appellant therein to commence a new action. This disposition of that case in this court may be found in *Wright v. Suydam,* 59 Wash. 530, 108 Pac. 610, 110 Pac. 8. Judgment of dismissal without prejudice was accordingly entered in that action by the superior court after the commencement of this action.

On September 23, 1909, after the rendering of the first judgment in the superior court and before the commencement of this action, Suydam acquired title to the land by conveyance from the Stevenson-Sanders Land Company, in pursuance of his contract with that company. This deed

of conveyance was recorded in the office of the auditor of
King county on February 19, 1910. Wright did not receive
knowledge of the execution of this deed until after its re-
cording. On May 16, 1910, Wright caused to be prepared
a deed of conveyance for execution in pursuance of his con-
tract with Suydam, presented it to Suydam, tendered him the
balance of the purchase price, and demanded that he exe-
cute the deed, which tender and demand were refused. There-
after, on the same day, this action was commenced in the
superior court, and notice of the pendency thereof duly filed
in the office of the auditor of King county. On the same day,
as we have already noticed, Suydam executed a deed of con-
veyance for the land to William Pitt Trimble. This deed
was not recorded in the office of the auditor of King county
until some time later. In this and the former action Wright's
wife was joined as plaintiff, but she has disclaimed all interest
in the controversy and hence we have not referred to her as
a party.

The argument of counsel for appellant upon the questions
of fact involved is directed particularly to the finding of the
trial court that there was an agreed extension of time for the
examination of the abstract and the consummation of the
sale. It is insisted that this finding is not warranted by the
evidence, and also that such a contract would have to be in
writing to become legally binding, in the light of the statute
of frauds, since it would involve the modification of a con-
tract for the sale of lands. The view we take of the nature of
the contract and of the respective rights thereunder, which
will be hereafter noticed, renders it unnecessary for us to
follow this contention and determine whether there was any
such agreement then made, binding in law. There are, we
think, other controlling facts touching the life and vitality of
the contract after the expiration of the times therein specified
for doing the things agreed to be done upon the part of the
respective parties; that is, the fact that at no time did
Suydam ever tender performance of the contract to Wright

or demand any performance thereof from Wright, and the fact that Wright never at any time claimed rescission of the contract because of defective title. These facts were in effect found by the trial court, and we think are fully sustained by the evidence. We are satisfied from the evidence that the request made by Suydam of Wright for the return of the $100 paid upon the purchase price was not made or claimed as a matter of right, nor upon the ground of failure on the part of Wright to perform his part of the contract. We notice this fact in view of the language of the finding above quoted, which might be considered as not clear in this regard.

The argument of counsel for appellant upon the questions of law involved in the merits of the case proceeds upon the theory that the contract amounts to no more than a mere option to purchase, under which Wright's privilege of purchase ceased upon the expiration of the time agreed upon for his examination of the abstract, assuming that he did not then elect to exercise his option, without any notice or claim given or made by Suydam to Wright looking to the termination of the option, and that, viewed as a contract for the sale of the land, the contract lacks mutuality and therefore cannot be enforced as such.

That the contract is not an option in form, is apparent from a casual reading of it. It is expressly stated therein that the $100 was received from Wright as part payment upon the purchase price of the land, followed by provisions clearly contemplating the consummation of a sale of the land from Suydam to Wright, amounting to an agreement on the part of Suydam to sell and on the part of Wright to purchase. The argument is in substance that Wright cannot, under the terms of the contract, be compelled to specifically perform; that is, that he cannot be compelled to take the land and pay the balance of the purchase price even though the title is satisfactory to him; that the only remedy available to Suydam is that he may retain the $100 paid upon the purchase price as liquidated damages resulting from Wright's

failure to perform, and that therefore the contract is in substance a mere option. This is a plausible argument, but loses sight of the substance of the contract and rests solely upon the provisions thereof relating to the remedy available to Suydam in the event Wright fails to perform. The fact remains, however, that the contract constitutes an agreement on the part of Suydam to sell, and on the part of Wright to purchase, the land. This, we think, distinguishes it from a mere option contract, which upon the failure of the prospective purchaser to exercise his option rights within the time agreed upon would automatically cut off such right without any notice given or demand made for performance by the owner of the land. In 1 Warvelle on Vendors (2d ed.), §125, the distinction between an option and a contract for sale is commented upon as follows:

"There is a marked distinction between an option of sale and a contract for sale, although such distinction is frequently overlooked. If without consideration an option is a mere proposal which may be retracted at any moment; if given for a consideration it amounts to nothing more than a privilege to purchase at a certain price or within a certain time. It is not a sale; it is not even an agreement for a sale; at best it is but a right of election in the party receiving same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell. If based upon a consideration it cannot be extended beyond the time limited without a new consideration, and even though this is attempted and such extension is evidenced by a writing it is still *nudum pactum* and void."

See, also, 39 Cyc. 1232; 21 Am. & Eng. Ency. Law (2d ed.), 931.

Now the fact that the contract by its terms confines Suydam's remedy against Wright to the recovery of liquidated damages—and that is what the right to retain the $100 paid upon the purchase price in effect amounts to—does not change the fact that the contract is on Suydam's part a promise to sell and on Wright's part a promise to purchase. An agreement in a contract, specifying and limiting the par-

ticular remedy available to a party to the contract upon the breach thereof by the other, does not change the respective mutual promises which constitute the substance of the contract. Wright did not contract and pay for a mere privilege to purchase land at a future time, but he agreed to purchase and paid part of the purchase price. We are of the opinion that the contract is one for the sale of land, both parties being bound thereby as seller and purchaser, respectively, though the remedy of Suydam upon breach by Wright may be confined to liquidated damages. Our decisions in *Jones & Co. v. Eilenfeldt*, 28 Wash. 687, 69 Pac. 368, and *Neeson v. Smith*, 47 Wash. 386, 92 Pac. 131, cited and relied upon by counsel for respondent, are not opposed to this view, since the contracts therein involved and regarded as options contained no agreement whatever, either express or implied, on the part of the prospective purchasers to purchase.

Viewed as a contract for the sale of the land, do its terms disclose, (1) such want of mutuality of obligation from each party to the other that the law will decline to recognize it as a binding contract; or (2) such want of mutuality of remedy, available to each of the respective parties upon a breach by the other, that the law will not enforce specific performance against Suydam in favor of Wright because such remedy would not be available to Suydam upon a breach by Wright? It is insisted that such want of mutuality of obligation is evidenced by the terms of the contract providing that the title should be saisfactory to Wright; and that he may, upon the title proving unsatisfactory to him, however arbitrarily he decides that question, have returned to him the $100, and in that manner rescind the contract. In so far as the fact that the terms of the contract make the consummation of the sale dependent upon title being satisfactory to Wright is concerned, we think that he is not, by the terms of the contract, entitled to arbitrarily reject the title. This question was reviewed by us in *Dean v. Williams*, 56 Wash. 614, 106 Pac. 130, where there was involved a con-

tract quite similar to this in so far as the right of the pur-
chaser to reject the title is concerned. We held in that case
that the purchaser did not have the right to arbitrarily re-
ject the title, notwithstanding the contract seemed in terms
to so provide; but that he was bound to accept a good, mar-
ketable title. See, also, *Anderson v. Frye & Bruhn*, 69 Wash.
89, 124 Pac. 499. We think that Wright was, in this re-
spect, bound by the terms of the contract to the extent of
being liable to forfeit the $100 paid upon the purchase price
as liquidated damages, so that there was no lack of mutu-
ality of obligation in this respect. Nor do we think there
was any lack of legal mutuality of obligation because of the
fact that Wright may satisfy all obligations of the contract
upon his part to perform by forfeiture of the amount paid
upon the purchase price. His obligation to forfeit this sum
was a sufficient consideration to support the promise made
by Suydam to convey, upon the payment of the balance of
the purchase price. Clearly this was sufficient mutuality of
obligation. It also seems plain, under our former decisions,
that the fact that the contract was unilateral in form, being
signed only by Suydam, would not show a want of mutuality.
*Western Timber Co. v. Kalama River Lumber Co.*, 42 Wash.
620, 85 Pac. 338, 114 Am. St. 137; 36 Cyc. 623, 624.

The question of want of mutuality of remedies, as affect-
ing appellant's right to enforce specific performance of the
contract as well as by an action to recover damages, is one, at
first thought, of seeming difficulty, in view of the fact that
Suydam's remedy for a breach on the part of Wright is
limited to liquidated damages, measured by the amount paid
upon the purchase price. Counsel for appellant invoke the
general rule that there must be mutuality of remedy as well
as of obligation in order to enable either party to invoke the
remedy of specific performance. In 2 Pomeroy's Equitable
Remedies, § 769 (Supplementary to Pomeroy's Equity Juris-
prudence), the learned author states the rule, which seems to
be subject to numerous exceptions, as follows:

"The frequent statement of the rule of mutuality,—'that the contract to be specifically enforced must as a general rule, be mutual,—that is to say, such, that it might, at the time it was entered into, have been enforced by either of the parties against the other,' is open to so many exceptions that it is of little value as a rule. But in view of the firm place that the doctrine of mutuality has obtained in the courts of equity, it seems well to attempt a restatement that shall be more free from exceptions. The following form seems to meet the cases generally. If, at the time of the filing of the bill in equity, the contract being yet executory on both sides, the defendant, himself free from fraud or other personal bar, could not have the remedy of specific performance against the plaintiff, then the contract is so lacking in mutuality that equity will not compel the defendant to perform but will leave the plaintiff to his remedy at law. This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality. So far as there is a principle of mutuality, it is a mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made. Equity is entirely willing to grant plaintiff the performance he applies for, but if it finds that in doing so the defendant, without fault, is left in turn to a remedy at law only, it refuses to lend its aid to such an unequal result. Therefore any original lack of mutuality in the terms of the contract will have no influence if the court finds that giving the plaintiff his relief will no longer leave the defendant to the law for relief."

Now it is apparent that Suydam will, in this controversy, not be left to his remedy at law. Indeed, in view of the fact of Wright's tender, which has at all times been kept good, Suydam will not require any remedy, at either law or equity, to enforce his rights. He is in substantially the same position as if respondent had entirely performed his part of the contract, including that part which was not specifically enforcible against him. One of the numerous exceptions to the rule is where the plaintiff's unenforcible promise has been performed. In 2 Pomeroy's Equitable Remedies, § 771, the author further observes:

"So long as such a contract remains executory, the filing of the bill does not make the remedy mutual, and in these cases equity refuses specific performance against the defendant because of the lack of mutuality; in fact, because it would leave defendant in the unjust position of having no assurance of performance on plaintiff's part. But that equity is concerned only with the mutuality at the time of filing of the bill is clearly shown by those cases where the contract is *executed* on plaintiff's part. The terms are the same, but defendant would no longer need to trust an inadequate remedy at law, and equity compels him to perform."

In the text of 36 Cyc. 631, the rule is stated as follows:

"If the plaintiff has performed his unenforcible promise the fact that before such performance there was a lack of mutuality in the remedy is no defence."

Numerous cases are there cited in support of the text. The case of *Brown v. Munger*, 42 Minn. 482, 44 N. W. 519, is in principle much like this. There the defendant was seeking specific performance by his answer in a suit to cancel the contract. It appeared that the contract would have been unenforcible in equity on the part of the plaintiff because certain land which he was to receive as part consideration for the performance of the contract on his part was not described, but was to be selected by the defendant, and was to be of a certain kind and within a certain distance of a railroad. Disposing of the contention that, by reason of this fact, there was a want of mutuality of remedies, the court observed:

"In the case at bar, although the contract may have been originally, as regards its performance by the defendant, beyond the jurisdiction of the court, the only obstacle in the way has been removed in the manner provided for by the terms of the agreement. The defendant alleges in his answer that he has selected out, set apart, and appropriated to the contract, as he was authorized to do, certain described tracts of land, completely answering the requirements of the instrument as to quantity, quality, and location; that he has properly executed and tendered conveyances thereof, and in all things stands prepared and willing to perform the contract

on his part. Upon the allegations of the answer, there is absolutely nothing in the way of a decree which will fully and equitably protect and enforce the rights of both parties. If these allegations prove true, defendant is entitled to specific performance."

We are of the opinion that, at the time of the commencement of this action and since then, by reason of Wright's tender, the defense of want of mutuality of remedies is not available to Suydam in this action. Indeed, he is in such a situation that he needs no remedy, except that the appellant's tender be kept good, and this is properly provided for in the decree.

Had the contract lost its vitality, and the further right of the parties thereunder come to an end, at the time of the tender of the balance of the purchase price on the date of the commencement of this action? We have seen, that on that day Wright tendered to Suydam the full amount of the balance of the purchase price at the same time demanding a deed in pursuance of the contract; that Suydam had not theretofore at any time offered to perform, or made any demand upon Wright to perform, the contract and that Wright had not theretofore sought to rescind on account of defective title. It is plain from the terms of the contract that the payment of the balance of the purchase price and the conveyance of the land to be made by Suydam to Wright are mutual, concurrent, and dependent acts, to be performed by the respective parties at the same time. Under our repeated holdings, these facts would prevent Suydam from successfully claiming that Wright is not entitled to a conveyance, as provided by the terms of the contract. See *Lewis v. Wellard*, 62 Wash. 590, 114 Pac. 455, where our former decisions on the subject are reviewed.

It is insisted by counsel for appellant that respondent cannot have a decree for specific performance, because appellant did not have, at the time of the rendering of the decree, and has not since then had, any title to convey. In view of

the fact that appellant has voluntarily disqualified himself from performing his contract to whatever extent he may be so disqualified, the fact that respondent is not asking damages in lieu of a conveyance from appellant but is willing to take a conveyance from him in compliance with the terms. of the contract, and that respondent is resting his right upon the theory that appellant has *not* disqualified himself from conveying in pursuance of the terms of the contract, we think that appellant cannot now be permitted to say that any conveyance he might now make in pursuance of the contract will not vest title in respondent. Appellant may have divested himself of title by conveyance to Trimble to the extent of estopping himself to claim title as against Trimble, but that does not prevent respondent from proceeding upon the theory that appellant is not disqualified from performing the contract by conveyance in pursuance of its terms. Surely appellant cannot be permitted to avoid performance by claiming disqualification to perform, when such performance does not involve any act of greater difficulty than the mere execution of a deed. There is nothing rendering even slightly difficult the execution by appellant of a deed such as this contract calls for. We would have here a quite different question if respondent were asking for a conveyance or damages, in the alternative, and were conceding disqualification to perform on the part of appellant. We are not here concerned with any controversy which may arise between respondent and Trimble after conveyance is made to respondent in pursuance of this contract. Enough appears, however, to show that, by reason of Trimble's notice of respondent's rights under this contract, respondent's claim of right as against Trimble is apparently not unfounded. No authority has been called to our attention touching this contention of appellant. We think, however, it is fully answered by the remarks of Prof. Pomeroy in his Specific Performance of Contracts (2d ed.), § 438, as follows:

"The general doctrine is firmly settled, both in England and in this country, that a vendor whose estate is less than or different from that which he agreed to sell, or who cannot give the exact subject-matter embraced in his contract, will not be allowed to set up his inability as a defense against the demand of a purchaser who is willing to take what he can get with a compensation. The vendee may, if he so elect, enforce a specific performance to the extent of the vendor's ability to comply with the terms of the agreement, and may compel a conveyance of the vendor's deficient estate, or defective title or partial subject-matter, and have compensation for the difference between the actual performance, and the performance which would have been an exact fulfillment of the terms of their contract."

The fact that compensation is not here sought does not lessen the force of this doctrine as applicable here.

At the time this action was commenced, the former action against Suydam and the Stevenson-Sanders Land Company to enforce specific performance of this contract was still pending in this court upon appeal; that is, while our original opinion had been filed, deciding the case against Wright, it was not then finally disposed of upon rehearing, and of course no formal judgment of dismissal without prejudice had then been entered in the superior court, as directed by us in disposing of the petition for rehearing. Upon these facts, Suydam sought an abatement of this action upon the ground of another action pending, and now insists that the trial court erred in not dismissing this action for that reason. There is some controversy as to the question of abatement being timely raised in this action, by proper motion or plea. However that may be, it appears that our decision upon the rehearing of the former case, directing its dismissal without prejudice, was rendered August 6, 1910, and the formal order of dismissal was entered in the superior court on October 18, 1910, while the trial of this action occurred October 25, 1910. It is apparent, then, that no other action was pending at the time this action was tried upon the merits.

In the text of 1 Cyc. 25, the prevailing rule touching abatement under such circumstances is stated as follows:

"The tendency of the later cases and a preponderance of authority sustain the doctrine that it is a good answer to a plea of the pendency of a prior action for the same cause that the former suit has been discontinued, whether the discontinuance be before or after the filing of the plea. Under this doctrine the plea will be overruled unless the prior suit is pending at the time of the trial of the second."

This is in harmony with the remarks of Justice Dunbar, made in *Harris v. Fidalgo Mill Co.*, 38 Wash. 169, 80 Pac. 289, where he said:

"It is not enough to show that another action is pending, but it must appear that such action would be liable to become vexatious, and also that full relief could have been obtained in the former action."

It is plain that the former action could not have been vexatious nor afford the relief here sought by respondent, at any time after the commencement of this action. It is worthy of note in connection with what we have here said, that the former action was against both Suydam and the Stevenson-Sanders Land Company. The thing sought in that action was not conveyance from Suydam alone, but conveyance from Suydam and the Stevenson-Sanders Land Company. This relief, it was manifest, could not be granted in that action, because the land company had not then received the purchase price, and therefore it could not be compelled to convey. Had the relief there sought been only a conveyance from Suydam, the questions involved would have been quite different. It is true that, in our opinion, in *Wright v. Suydam*, 59 Wash. 530, 108 Pac. 610, 110 Pac. 8, we said that "a decree requiring Suydam to convey would be an idle and fruitless thing." This remark, however, was not necessary to a decision of any question there involved, and since the writer of this opinion was the writer of that one, he feels free to say here that the language quoted should not have been there used.

We conclude that the decree of the learned trial court properly disposed of the rights of the parties here involved, and that it should be affirmed. It is so ordered.

CROW, C. J., MOUNT, FULLERTON, GOSE, MORRIS, ELLIS, and MAIN, JJ., concur.