[No. 33921-8-II.  Division Two.  October 3, 2006.]

JOHN PARADISO, *as Trustee, Respondent,* v. JEANNE E. DRAKE, *Appellant.*

*Annette L. Monnett* and *Terrence C. Posey*, for appellant.

*David J. Corbett* (of *Eisenhower & Carlson, P.L.L.C.*), and *Philip A. Talmadge* and *Anne E. Melley* (of *Talmadge Law Group, P.L.L.C.*), for respondent.

¶1 ARMSTRONG, J. — Jeanne E. Drake agreed to sell "as is" nine vacant lots to John Paradiso's Living Trust (Trust). Drake refused to close the sale because a neighbor's septic drain field encumbered one of the lots and the proposed warranty deed did not contain the "as is" language present in the original sales agreement. The Trust sued for specific performance, and the trial court granted the Trust summary judgment. On appeal, Drake argues that she could not close because she could not convey clear title to the lots. In the alternative, she asserts that even if she breached the purchase and sale agreement, the agreement limited the Trust to recovering its earnest money deposit. Finally, Drake challenges the trial court's attorney fees award and its failure to strike a declaration and certain escrow records the Trust submitted in support of its summary judgment motion. Finding no error, we affirm.

332

## FACTS

¶2 Jeanne Drake agreed to sell nine vacant lots on Ketron Island to the Trust. Johnnie Paradiso (Paradiso), one of John's daughters, had a durable power of attorney to act on the Trust's behalf; she negotiated the sale with Drake's husband. In the purchase and sale agreement, the Trust agreed to pay $65,000 for the lots and the parties agreed to close the sale on November 27, 2004.[1] The Trust paid the agreed upon $1,000 earnest money deposit.

¶3 One of the lots (Lot 8) had a septic drain field that served a neighbor's property. Although the parties dispute when they learned of the drain field, they agree that they both knew about it before the original closing date. Before closing, Drake's realtor, Susan Boyer, called Paradiso and explained that the parties needed to record a written easement for the septic drain field on Lot 8. After Boyer told Paradiso that Drake could not draft and record the easement before the closing date, Paradiso signed a document offering to extend the closing date; Drake never signed the extension. Shortly before the original closing date, the Trust deposited the full purchase price in escrow.

¶4 Before the sale closed, Pat Lord, the owner of the lot the septic drain field serviced, approached Drake and offered to purchase Lot 8 and another lot adjoining her property, both of which Drake had already contracted to sell to the Trust. Drake agreed to sell Lord the two lots for $65,000. Drake's husband, Bill Graves, accepted a $10,000 down payment from Lord before the closing date of Drake's contract with the Trust.

¶5 Drake refused to close. She explained that certain errors and omissions in the closing documents and the deed precluded her from signing those documents. Specifically, she said that the closing documents did not contain the warranty disclaimers that the parties agreed on during

---

[1] Because November 27, 2004, fell on a Saturday, the parties extended the contract's closing date to November 29, 2004.

negotiations. Drake maintained that this excused her from performing under the contract because she could not provide the quality of title the agreement called for. Thus, according to Drake, the purchase and sale agreement expired and, because the closing documents had not been signed, she intended to complete the sale to Lord. The Trust's attorney wrote Drake a letter demanding performance, but she refused.

¶6 The Trust sued for specific performance and attorney fees and costs under the purchase and sale agreement. The parties unsuccessfully attempted to settle their dispute.

¶7 Both parties moved for summary judgment. Before the summary judgment hearing, Drake moved to strike the escrow company's transaction memo log,[2] statements in David Corbett's declaration,[3] and statements in Paradiso's declaration recounting conversations with Graves, Boyer, and Lord. The trial court granted Drake's motion with respect to Boyer's and Lord's statements, ruling that Lord's statements were irrelevant and that the record did not sufficiently show that Boyer was Drake's agent.

¶8 The trial court granted the Trust's summary judgment motion and ordered Drake to convey title to the nine lots by statutory warranty deed, subject to whatever rights the neighbor had or may acquire to the drain field on Lot 8. The trial court also awarded the Trust $24,732.95 in attorney fees and costs.

¶9 The principal issue is whether the trial court erred in granting the Trust specific performance in spite of the possible drain field encumbrance on one of the lots.

---

[2] The transaction memo log is a document from the escrow company's records of the Drake/Trust transaction containing handwritten notes detailing conversations between escrow company employees and the parties relating to the transaction at issue.

[3] David Corbett represented the Trust at trial and now represents the Trust on appeal.

## ANALYSIS

### The Purchase and Sale Agreement

### 1. Standard of Review

■ ¶10 We review a summary judgment de novo. *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005) (citing *Hubbard v. Spokane County*, 146 Wn.2d 699, 707-08, 50 P.3d 602 (2002)). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

■ ¶11 We interpret unambiguous contracts as a matter of law. *State v. Brown*, 92 Wn. App. 586, 594, 965 P.2d 1102 (1998). Summary judgment is proper even if the parties dispute the legal effect of a certain provision of an unambiguous contract. *Brown*, 92 Wn. App. at 594 (citing *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995)). The nonmoving party, however, may not rely on speculation, argumentative assertions, or conclusory statements. *Seattle Police Officers Guild v. City of Seattle*, 151 Wn.2d 823, 848, 92 P.3d 243 (2004); *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 430, 38 P.3d 322 (2002).

### 2. Did Drake Breach the Agreement?

¶12 Drake states that she refused to close because the deed did not contain the "as is" and "no warranty" language contained in the contract. Clerk's Papers (CP) at 66. She claims that she did not breach the agreement because the contract's "as is" clause effectively disclaimed any title warranties as well as all warranties regarding the property's physical condition. She argues that without the disclaimer, she would have been liable for damages because she could not provide clear title to Lot 8 because of the drain field.

¶13 But as we will discuss below, the Trust clearly signaled its intent to waive any claim for breach of a warranty based on the drain field. Most importantly, the Trust agreed to extending the closing date so Drake's realtor could prepare and record an easement covering the drain field. Having agreed to record an easement, the Trust could not object to excluding the recorded encumbrance in the warranty deed. In fact, the Trust never objected to excepting the drain field encumbrance from the warranty deed.

### 3. Is the Trust Entitled to Specific Performance?

¶14 Drake argues that the contract's express language precludes the Trust from seeking specific performance.

■ ¶15 Generally, the court has discretion to allow a buyer specific performance of a real estate purchase agreement. *Sheldon v. Hallis*, 72 Wn.2d 993, 997, 435 P.2d 988 (1967) (quoting *Tombari v. Griepp*, 55 Wn.2d 771, 775, 350 P.2d 452 (1960)); *Chan v. Smider*, 31 Wn. App. 730, 735, 644 P.2d 727 (1982) (citing *Carpenter v. Folkerts*, 29 Wn. App. 73, 76, 627 P.2d 559 (1981)). To obtain specific performance, a party must present clear and unequivocal evidence that " 'leaves no doubt as to the terms, character, and existence of the contract.' " *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993) (quoting *Powers v. Hastings*, 93 Wn.2d 709, 713, 612 P.2d 371 (1980)). Specific performance is an appropriate remedy for a seller's breach only when (1) damages are not an adequate remedy for the buyer, (2) the buyer has not defaulted on its obligations, and (3) the contract does not expressly bar specific performance. *See Kreger v. Hall*, 70 Wn.2d 1002, 1009, 425 P.2d 638 (1967) (party seeking performance cannot be in default); *Chan*, 31 Wn. App. at 735 (inadequacy of damages); 18 WILLIAM STOEBUCK & JOHN WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 16.8, at 245 (2d ed. 2004) (specific performance unavailable if the parties have expressly excluded that remedy).

¶16 Drake argues that the agreement expressly states that the Trust has no right to specific performance. She maintains that the contract allows the Trust to recover only its $1,000 earnest money payment.

■■ ¶17 We follow the objective manifestation theory of contracts, looking for the parties' intent by its objective manifestations rather than the parties' unexpressed subjective intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005) (citing *Max L. Wells Trust v. Grand Cent. Sauna & Hot Tub Co. of Seattle*, 62 Wn. App. 593, 602, 815 P.2d 284 (1991)). Thus, we consider only what the parties wrote, giving words in a contract their ordinary, usual, and popular meaning unless the agreement, as a whole, clearly demonstrates a contrary intent. *Hearst Commc'ns, Inc.*, 154 Wn.2d at 504 (citing *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 637, 745 P.2d 53 (1987); *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

■ ¶18 Paragraph c of the contract provides:

> **Condition of Title.** . . . [T]itle to the Property shall be marketable at Closing. The following shall not cause the title to be unmarketable: . . . easements and encroachments, not materially affecting the value of or unduly interfering with Buyer's reasonable use of the Property. . . . Title shall be conveyed by a Statutory Warranty Deed.[4]

CP at 7. And paragraph d provides:

---

[4] RCW 64.04.030 lists the warranties implied within statutory warranty deeds. Specifically, the statute provides that:

> Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a conveyance in fee simple to the grantee, his heirs and assigns, with covenants on the part of the grantor: (1) That at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, and such covenants shall be obligatory upon any grantor, his heirs and personal representatives, as fully and with like effect as if written at full length in such deed.

**Title Insurance.** . . . If title cannot be made so insurable[5] prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer . . . and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide insurable title.

CP at 7. Paragraph m states that "[n]o modification of [the] Agreement shall be effective unless agreed in writing and signed by Buyer and Seller." CP at 8.

¶19 Drake's argument that the Trust may seek only a refund of the earnest money fails. Paragraph d limits the buyer's remedy only if title is not insurable because of a defect the buyer is not willing to waive. The Trust can waive any such defect and proceed with the purchase. *See Carpenter*, 29 Wn. App. at 78 (where a contract provides that seller is to provide marketable title, the buyer, and not the seller, has the decision to complain of the lack of good and marketable title). If the Trust waived any possible defect caused by the drain field, Drake could provide insurable title, excepting any claim arising from the drain field.

¶20 Drake argues that she gave the Trust the opportunity to waive the encumbrance that made the title uninsurable but the Trust declined by refusing to accept her settlement offers. But Drake's settlement offers were to enter into entirely different contracts;[6] the offers were not opportunities for the Trust to waive any defects that existed in the original purchase and sale agreement. The record contains no evidence that Drake offered the Trust an opportunity to waive any drain field encumbrance.

---

[5] "[S]o insurable" means that the title "shall contain no exceptions other than the General Exclusions and Exceptions" in the title insurance company's standard form and the "Special Exceptions" listed in paragraph c of the contract. CP at 7.

[6] Drake first offered to sell the Trust two fewer lots than called for in the original contract and to reduce the price to $50,000. Drake then offered to pay $5,000 if the Trust released any and all interests in the purchase and sale agreement. ER 408 does not bar this court from considering that evidence because we are not considering the information to determine liability for or invalidity of the Trust's claim or its amount.

¶21 The parties dispute whether the Trust actually expressly or orally waived the drain field encumbrance. Drake declares that neither Paradiso, the Trust, nor any Trust representative expressly waived any defects or encumbrances as the contract required. Drake says that had the Trust made that waiver, she would have sold the property to the Trust.

¶22 Paradiso states that she attempted several times to inform Drake that she intended to purchase all nine lots despite the fact that Lord's drain field encumbered Lot 8; that she knew the drain field on Lot 8 existed when she made the offer; that she discussed the drain field with Graves when making the offer; that she offered to make a written record of her understanding that the Trust would take the land subject to Lord's rights to the drain field on Lot 8; and that shortly before the scheduled closing date, she told Drake's realtor that the Trust had no problem with the septic drain field. More importantly, Paradiso agreed to Boyer's request for an extension of time to record an easement that would have formally created the drain field encumbrance. Paradiso's agreement to extend the closing time unequivocally signals the Trust's waiver of the drain field encumbrance. Finally, the Trust tendered the full purchase price at the scheduled closing after Drake had raised issues about the drain field encumbrance. Drake does not contradict these specific facts; her conclusory assertion that the Trust did not waive the drain field encumbrance is not sufficient to overcome Paradiso's specific factual assertions. See Overton, 145 Wn.2d at 430.

¶23 A buyer is entitled to specific performance even though the seller has a lesser quality title than that contracted for. See Streater v. White, 26 Wn. App. 430, 433, 613 P.2d 187 (1980). And the remedy is also available where, as here, the buyer does not seek to abate the purchase price. See Wright v. Suydam, 72 Wash. 587, 602, 131 P. 239 (1913). In Wright, the purchaser had the right to cancel the contract and get his down payment back if he found the property or title insufficient. Wright, 72 Wash. at

589. The court ordered the seller to perform under the contract, stating that "[s]urely [the seller] cannot be permitted to avoid performance by claiming disqualification to perform, when such performance does not involve any act of greater difficulty than the mere execution of a deed." *Wright*, 72 Wash. at 601. The court held that

"a vendor whose estate is less than or different from that which he agreed to sell, or who cannot give the exact subject-matter embraced in his contract, will not be allowed to set up his inability as a defense against the demand of a purchaser who is willing [to proceed under the contract with an abatement]."

*Wright*, 72 Wash. at 601-02 (quoting JOHN NORTON POMEROY, A TREATISE ON THE SPECIFIC PERFORMANCE OF CONTRACTS § 438, at 503 (2d ed. 1897)).

¶24 *Streater* and *Wright* control. With clear and unequivocal evidence that the Trust was willing to waive any drain field encumbrance, the agreement obligated Drake to complete the sale subject to the encumbrance. The trial court did not err in granting summary judgment and ordering specific performance.

¶25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL and PENOYAR, JJ., concur.

Review denied at 160 Wn.2d 1024 (2007).