# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELIAH MCCALLA, an individual,<br><br>　　　　　　　Respondent,<br><br>　　　　v.<br><br>YEE-WEN HSU, as trustee of YEE-WEN HSU REVOCABLE TRUST; and YEE-WEN HSU and DANIEL A. HIPP, individually and the marital community comprised thereof,<br><br>　　　　　　　Appellants. | No. 85294-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Yee-wen Hsu appeals a trial court's order granting partial summary judgment in favor of Eliah McCalla. The trial court ruled as a matter of law that Hsu breached the terms of the parties' Real Estate Purchase and Sale Agreement (REPSA) by failing to complete closing of the agreement's transaction and ordered Hsu to specifically perform all of the obligations of the agreement. Because fact issues preclude summary judgment, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The sole property of the Yee-Wen Hsu Revocable Living Trust (Hsu Trust) is the property located at 2005 NE 135th Street Seattle, Washington (herein

1

referred to as the "subject property").  Hsu is the sole trustee of the Hsu Trust.

McCalla owns and resides at the property adjacent to the subject property.  On

February 23, 2022, Hsu, acting in her capacity as trustee of the Hsu Trust,

entered into a REPSA to sell the subject property to McCalla.

On March 3, 2022, Hsu texted McCalla, "I never felt so painful, and stupid.

I made this sale decision too hasty, my mother said I will regret it, [and] I have

started to suffer the pain of regrets.  This will stay with me until I die."  Hsu also

told McCalla that her husband, Daniel Hipp, was now asserting a community

property interest in the subject property.  Hsu then told Old Republic, the title

insurance company, that Hipp was claiming this interest.  As a result, Old

Republic required Hipp to sign the deed before it would warrant marketable and

insurable title.  When Hipp refused to sign the deed, the REPSA lapsed.

On May 9, 2022, McCalla filed a complaint against Hsu asserting claims

for (1) breach of contract, (2) breach of implied covenant of good faith and fair

dealing, (3) specific performance, (4) declaratory judgment, (5) tortious

interference with contractual relations, and (6) injunctive relief.  On January 13,

2023, McCalla filed a motion for partial summary judgment requesting that the

trial court rule as a matter of law that Hsu breached the REPSA by failing to

provide marketable title and close the transaction and order Hsu, as sole trustee,

to convey marketable title and possession.

In response to McCalla's motion, Hsu argued that McCalla's sole and

exclusive remedy under the REPSA in this circumstance—where Hsu allegedly

failed to provide marketable title—was to recover his earnest money.  In support

of this argument, Hsu cited the following provision:

> e.  Title Insurance . . . . If title cannot be made so Insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide Insurable title.

Based on this same provision, and for similar reasons, Hsu argued that the trial court could not properly grant specific performance.

The trial court rejected Hsu's arguments and granted McCalla's motion for partial summary judgment. The court ruled as a matter of law that Hipp had no "community property or other interest in the [subject] property" and that Hsu "had an obligation under the REPSA to provide marketable title" and ordered Hsu to specifically perform all of the obligations of the REPSA. Addressing Hsu's arguments regarding the title insurance provision of the REPSA, the court concluded that "Paragraph 'e' does not apply in this case as Seller never offered Buyer an opportunity to waive the encumbrance. *Paradiso v. Drake*, 135 Wn. App. 329 was relied upon in part for this decision." The court subsequently denied Hsu's motion for reconsideration, granted Hsu's motion to enter final judgment under CR 54(b), and awarded attorney fees and costs to McCalla as the prevailing party.

Hsu appeals.

ANALYSIS

Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. CR 56(c). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Ghodsee v. City of Kent*, 21 Wn. App. 2d 762, 768, 508 P.3d 193 (2022). We review orders on summary judgment de novo. *Werlinger v. Clarendon Nat'l Ins. Co.*, 129 Wn. App. 804, 808, 120 P.3d 593 (2005). As discussed in detail below, the trial court here decided three principal issues on summary judgment. Viewing the evidence in the light most favorable to Hsu (the nonmoving party), we find fact issues preclude summary judgment as to each of those issues.

First, the trial court concluded as a matter of law that Hipp had no "community property or other interest in the [subject] Property." The record shows, without dispute, that Hsu's mother gifted Hsu the subject property in 2004, before Hsu married Hipp, making it separate property. RCW 26.16.010; *In re Marriage of Shannon*, 55 Wn. App. 137, 140, 777 P.2d 8 (1989). In order for the subject property to be converted into community property, Hipp must show a mutual intention of the parties to convert the separate property into community property. *Shannon*, 55 Wn. App. at 140. The record is devoid of any such evidence, as the trial court correctly ruled.

But while we agree with the trial court that Hipp did not have a community property interest in the subject property, we disagree with its ruling that Hipp had no "other interest" in the property. The record on this point shows that Hipp added new towel bars in the bathrooms, upgraded shelving in numerous closets, painted the entryway and deck, upgraded landscaping, and installed flooring in the property. Contrary to the trial court's ruling, such evidence is sufficient to

- 4 -

establish fact issues as to whether Hipp has an equitable lien on the subject property. *See In re Estate of Trierweiler*, 5 Wn. App. 17, 22, 486 P.2d 314 (1971) (where separate property of one spouse is used to improve separate property of other spouse, spouse furnishing funds is entitled to equitable lien on separate property of other spouse to secure repayment); *Conley v. Moe*, 7 Wn.2d 355, 363-64, 110 P.2d 172 (1941) (where community funds are used to increase value of separate property, the community is entitled to reimbursement for increased value of the separate property). We therefore reverse and remand on this point to determine whether the improvements performed by Hipp give rise to an equitable lien in the subject property and, if so, the amount of that equitable lien.

Second, the trial court ruled that Hsu breached the REPSA by failing to close the transaction. According to the REPSA, Hsu agreed to convey marketable title at closing. This means that Hsu, as seller, had a legal duty to timely clear the title if it could be done by the exercise of reasonable diligence. *Langston v. Huffacker*, 36 Wn. App. 779, 788, 678 P.2d 1265 (1984). While the record shows that Hsu "asked" and "tried to convince" Hipp to release his claimed interest in the property, that appears to be the extent of her efforts. She did not, for example, demand that Hipp sign the deed and other closing documents, threaten litigation, or sue Hipp to adjudicate his claimed interest. On this record, issues of fact remain as to whether Hsu's actions, and inactions, satisfy the reasonable diligence requirement.

Third, upon ruling that Hsu breached the terms of the REPSA, the trial court ordered Hsu to specifically perform all of the obligations of the agreement.

Generally, a trial court has discretion to grant a buyer's request for specific performance of a real estate purchase agreement. *Paradiso v. Drake*, 135 Wn. App. 329, 335, 143 P.3d 859 (2006). Specific performance is an appropriate remedy for a seller's breach when (1) damages are not an adequate remedy for the buyer, (2) the buyer has not defaulted on its obligations, and (3) the contract does not expressly bar specific performance. *Id.* The sole issue here is prong three: whether the title insurance provision of the REPSA, quoted above, bars specific performance based on the facts of this case.

McCalla argues that specific performance is not barred by the terms of the REPSA and cites *Paradiso* in support of his argument. In *Paradiso*, the seller, Drake, breached a REPSA with the buyer, the John Paradiso Living Trust (Paradiso). 135 Wn. App. at 332. Drake refused to sign closing documents after a neighbor's septic drain field was found on one of the lots subject to the REPSA. *Id.* at 332-33. Drake asserted that because the warranty deed did not contain "as is" language, she could not provide clear title at closing. *Id.* at 331. Similar to the facts of this case, Paradiso filed a civil action followed by a motion for summary judgment seeking specific performance, and the trial court granted Paradiso's motion. *Id.* at 333.

On appeal, Drake argued that the title insurance provision of the REPSA (the same provision at issue here) precluded the trial court from granting specific performance. *Id.* at 336. We disagreed. Based on the express exception to the REPSA's exclusive remedy provision where "[b]uyer elects to waive such defects or encumbrances," we explained that Drake could provide sufficient insurable title

if Paradiso waived any possible defect caused by the drain field encumbrance. *Id.* at 337. We then held that the trial court did not err when it granted Paradiso's request for specific performance because "clear and unequivocal evidence [showed that Paradiso] was willing to waive any drain field encumbrance, [and] the agreement obligated Drake to complete the sale subject to the encumbrance." *Id.* at 339.

The record in *Paradiso* was critical to our holding. We noted the following as evidence of Paradiso's intent to waive the drain field encumbrance:

> she discussed the drain field with [Drake's husband] when making the offer; that she offered to make a written record of her understanding that the Trust would take the land subject to [neighbor]'s rights to the drain field on Lot 8; and that shortly before the scheduled closing date, she told Drake's realtor that the Trust had no problem with the septic drain field. More importantly, Paradiso agreed to [Drake's realtor's] request for an extension of time to record an easement that would have formally created the drain field encumbrance. Paradiso's agreement to extend the closing time unequivocally signals the Trust's waiver of the drain field encumbrance.

*Id.* at 338. Given this clear and unequivocal evidence of intent to waive the drain field encumbrance, the trial court could properly grant specific performance based on the waiver exception in the REPSA's title insurance provision. *Id.* at 339.

While the evidence of waiver was clear and unequivocal in *Paradiso*, here it is not. The record here shows that McCalla informed Hsu on March 30, 2022 that he "is ready, willing and able to sign the closing documents and close this purchase on April 8, 2022, as agreed" and confirmed on April 8, 2022 that he "continue[s] to try to work with [the seller] to complete the deal" and the

"purchase agreement is still legally binding." The record further establishes that McCalla repeatedly rejected Hsu's numerous requests to cancel the REPSA after learning about Hipp's claimed interest. It appears that McCalla was ready, willing, and eager to accept the subject property without any claimed encumbrance—the meaning of "as agreed," when viewed in the light most favorable to Hsu—but nowhere does McCalla clearly and unequivocally state, as the buyer did in *Paradiso*, that he would waive any defects or encumbrances related to Hipp's asserted interest in the subject property. Without such evidence, fact issues preclude specific performance under the title insurance provision of the REPSA.

McCalla attempts to sidestep this evidence by claiming that Hsu was required by the REPSA to offer McCalla an opportunity to waive the defect or encumbrance and, absent such an express offer, the title insurance provision does not preclude specific performance. Nothing in the plain language of the REPSA expressly requires such an offer. And while we noted in *Paradiso* that there was "no evidence that Drake offered [the buyer] an opportunity to waive any drain field encumbrance" (135 Wn. App. at 337), we did not hold or imply that the absence of such an offer can displace the plain language of the REPSA, which expressly states that the buyer's sole and exclusive remedy where, as here, the seller fails to provide marketable title is to recover their earnest money "unless Buyer elects to waive such defects or encumbrances." Finding fact issues on that very point, we remand for further proceedings to decide this issue as well as those referenced above.

Lastly, both Hsu and McCalla seek costs on appeal and attorney fees under the REPSA. Because Hsu is the substantially prevailing party on appeal, she may recover costs pursuant to RAP 14.2. Because neither party has yet prevailed under the REPSA, we decline to award attorney fees on appeal. Instead, we remand this issue to the trial court to award attorney fees to the prevailing party, including fees incurred in this appeal, if and as authorized by the REPSA.

We reverse.

Feldman, J.

WE CONCUR:

Smith, C.J.

Dwyer, J.