[No. 12602. Department One. September 1, 1915.]

E. J. VIRTUE et al., *Appellants*, v. FRANK M. STANLEY et al., *Respondents*.[1]

SPECIFIC PERFORMANCE—CONTRACT—MUTUALITY. An agreement in settlement of a mortgage indebtedness whereby the mortgagor, among other things, agreed to convey certain property to the mortgagee, and the mortgagee agreed to thereupon satisfy the mortgage and cancel and return the mortgage note, is sufficiently supported by mutual promises and has sufficient mutuality to be enforcible by specific performance.

VENDOR AND PURCHASER—CONTRACT—TIME AS ESSENCE. In the absence of express words making time of the essence of a contract, there is no inference that time is essential in an agreement in settlement of a mortgage indebtedness whereby the mortgagor agreed to convey certain lands to the mortgagee within thirty days and concurrently pay a certain sum of money, the contract providing that, upon failure to so perform, the other party was to retain the note and mortgage.

SAME—CONTRACT—RESCISSION BY VENDEE—WAIVER. Where a settlement contract required a party to make a conveyance of a good marketable title within thirty days and concurrently pay a certain sum of money, the conveyance to be preceded ten days by the delivery of an abstract showing such title, an extension allowing the

[1]Reported in 151 Pac. 270.

parties to furnish the abstract "as soon as they could," with mere silence as to the more substantial parts of the performance, does not waive the right to rescind the contract for failure to perform within the time fixed in the contract; since waiver cannot be implied from mere silence.

SAME—CONTRACT — RESCISSION BY VENDEE — LACHES OF VENDORS. The vendee is within his rights in rescinding a contract for default, where the vendors were to make a conveyance within thirty days, and their status was not changed by any act of the vendee, and the vendee was in no wise in default and had not waived the time for performance, and the vendors, after receiving notice of rescission, failed for almost thirty days more to attempt or tender performance, and then only partially, having had a reasonable time to perform.

SAME—CONTRACT—FRAUD—WAIVER. There is a waiver of alleged fraud and want of title to shore lands and of the right of action upon covenants in the deed, in the original transaction in 1906, whereby defendants purchased plaintiff's lots and shore land rights, title to the shore lands then being in the state, where it appears that defendants knew that they were purchasing only plaintiff's preference right to purchase the shore lands, and that, in 1909, having purchased the state's title, defendants gave a new mortgage upon the whole title to extinguish the former purchase money mortgage, and in 1913 the parties entered into an agreement whereby such mortgage indebtedness was to be settled by the conveyance of other land and the payment of a sum of money.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be assigned upon the requiring of an election between affirmative defenses, where, by their conduct, defendants had waived the defenses which were abandoned at the trial.

APPEAL—REVIEW—QUESTIONS NOT PASSED ON—MORTGAGES—ATTORNEY'S FEES. Where, on the foreclosure of a note and mortgage, the trial court did not pass upon the question of attorney's fees, the supreme court will not determine what is a reasonable attorney's fee.

Cross-appeals from a judgment of the superior court for King county, Tallman, J., entered July 2, 1914, in favor of the defendants, in an action on a promissory note and to foreclose a mortgage, tried to the court. Reversed on plaintiff's appeal.

*Turner & Hartge,* for appellants.

*James R. Chambers,* for respondents.

HOLCOMB, J.—Plaintiff's action against the Stanleys and Mrs. Harris, former wife of Frank M. Stanley, was to recover $4,047.85 on a promissory note against Stanley and his former wife, and to foreclose a real estate mortgage upon lots 7, 8 and 9, in block 93, Lake Union Shore Lands, in King county. There was no dispute as to the execution of the note and mortgage nor any plea of payment.

By way of defenses and cross-complaint, respondents interposed five affirmative defenses. In each affirmative defense and cross-complaint, it was averred that George A. Virtue was the true and equitable owner of the note and mortgage, and that the same were taken in the name of the plaintiff, E. J. Virtue, for the sole use and benefit of George A. Virtue and to prevent the setting up of defenses to the mortgage. The first affirmative defense was want of consideration for the note and mortgage; the second, fraud in the procurement of the note and mortgage; the third, a failure of consideration; the fourth, a counterclaim of $2,132.71, based upon covenants of title in the deed, of which the note and mortgage represented a part of the purchase price; and the fifth, upon a contract in writing set forth therein, upon which respondents claimed specific performance.

Plaintiff filed a motion to strike certain parts of the answer and to require the defendants to elect between the matters set up in the first, second and third affirmative answers, and the fifth affirmative answer and cross-complaint, upon the ground that the last affirmative answer and cross-complaint was inconsistent with the other defenses. Albertson, Judge, before whom the motion came, denied same, except that the defendants were required to elect as between the affirmative defense of settlement and the other defenses mentioned. Reserving their exception to that order, defendants elected to proceed upon their fifth affirmative defense and cross-complaint, thereby eliminating, for the purposes of trial, all the affirmative defenses except the fourth

and fifth.  After trial, the trial judge dismissed the fourth affirmative defense and gave judgment for respondents on their fifth affirmative defense and cross-complaint, decreeing the specific performance of the settlement contract.  From this decree, plaintiff appeals, and defendants appeal from the required election of affirmative defenses and the denial of the fourth affirmative defense.

The trial court ordered George A. Virtue and wife to be made parties as cross-defendants, which was done, and they appeared and answered the cross-complaint.  Issues were joined on the pleadings and, among other things, appellants admitted that the note and mortgage sued on were held in trust by E. J. Virtue for George A. Virtue, her brother, who was the real owner; admitted the execution of the deed to the mortgaged premises, and that, when the deed was given, the ownership of the premises described in the deed as shore lands was in the state of Washington, but alleged that such conveyance carried the preference right to purchase the same, which fact was known to respondents.  The reply of plaintiff to the cross-complaint further affirmatively alleged certain fraudulent representations on the part of Frank M. Stanley which induced the making of the contract relied on by respondents, and alleged that, upon his subsequent discovery of the facts, and upon their failure to perform the contract set up by respondents, on August 8, 1913, appellant George A. Virtue gave respondents notice of rescission of the contract.

This is the settlement contract set up in respondents' fifth affirmative defense and cross-complaint, and of which specific performance was decreed:

"This agreement, made this 29th day of May, 1913, between Frank M. Stanley and Mabel M. Stanley, his wife, of Seattle, Washington, as parties of the first part, and George A. Virtue, of the same place, as party of the second part,

"Witnesseth: That whereas, heretofore on the 22nd day of September, 1906, the said Frank M. Stanley and his then wife, Bessie M. Stanley, made, executed and delivered to the said party of the second part, their certain mortgage to secure the payment of $2,500 with interest thereon, which mortgage is on lots 7, 8 and 9, in block "B" Westlake Boulevard addition to the city of Seattle, in King county, state of Washington, and is recorded in vol. 359 of mortgages, page 469, records of said King county, and

"Whereas, on the 25th day of January, 1909, said Frank M. Stanley and his then wife, Bessie M. Stanley, made, executed and delivered to E. J. Virtue their certain mortgage to secure the payment of $4,047.85, with interest thereon, which mortgage is on lots 7, 8 and 9 in block 93 of Lake Union Shore Lands in the city of Seattle, county of King and state of Washington, recorded in vol. 434 of mortgages, page 263, records of said King county; no part of either of above mentioned sums having heretofore been paid, and,

"Whereas, special assessments on the above described property (of which said property said parties of the first part are the owners) for Westlake Avenue Condemnation, under Ordinance No. 17,629 of said city of Seattle, have heretofore become delinquent and certificates of purchase therefor have been issued to one Chas. Crowley and one H. P. Kennedy, and the time of redemption therefrom expired on the 22nd day of May, 1913, and

"Whereas, the said parties of the first part, on the 21st day of May, 1913, made, executed and delivered their certain promissory note in the sum of $523.00, payable to the order of Jasper Compton one year after date, with interest from date thereon at the rate of 8% per annum, and at the same time made, executed and delivered their certain mortgage on the east half of the southwest quarter of the southeast quarter of section four, township eight north, range twenty-four east W. M., containing twenty acres, more or less, situate in Benton county, state of Washington, to secure the payment of said note, in consideration of the promise of the said second party to make the redemptions on the 22nd day of May, 1913, hereinabove set forth, and which said note and mortgage have been assigned to the party of the second part, and,

"Whereas, the said party of the second part, on the 22nd day of May, 1913, paid to the treasurer of the said city of

Seattle the sum of $525.30 and redeemed the said first here-inabove described property from the sale thereof for the said special assessments, and as evidence thereof there was issued on said date to the said party of the second part receipts of said treasurer's office No. 6417 and No. 6418.

"Now therefore, in consideration of the premises, it is here-by mutually agreed by the parties hereto as follows, to-wit:

"1. That the parties of the first part will within twenty days from this date deliver to party of the second part ab-stract of title to the hereinabove described property situate in said Benton county, Washington, brought down to date by a regular abstractor, showing good and marketable title in the parties of the first part or either of them, free from all liens and encumbrances whatsoever, except two certain mort-gages aggregating the principal sum of $2,700.00, which the party of the second part agrees to assume and pay, and will, within thirty days from this date, convey the said above described Benton county property to the party of the second part or his assigns by good and sufficient warranty deed, free from all liens and encumbrances whatsoever, except the said two mortgages only, with interest thereon from date of conveyance.

"2. That the said parties of the first part will also repay to the party of the second part on or before the delivery of said deed said sum of $525.30 heretofore paid by him to the treasurer of the city of Seattle as hereinbefore set forth.

"3. Upon delivery of deed and making of payment by parties of the first part as aforesaid, the party of the second part will cause to be satisfied of record the said mortgage re-corded in Vol. 359 of Mortgages, page 469, and also the mortgage recorded in Vol. 434 of Mortgages, page 263, records of said King county, and will cause to be cancelled and returned to the said parties of the first part the said note and mortgage made to said Jasper Compton, and the same shall thereupon be void and of no further force and effect.

"4. If the parties of the first part fail to perform any of the terms or conditions herein agreed to be performed by them, then in that event the said second party shall retain the said note and mortgage bearing date of May 21st, 1913, made by said parties of the first part to said Jasper Compton, to secure to said second party the payments made by him to the treasurer of the city of Seattle as herein set forth.

"In witness whereof, the parties hereto have executed these presents the day and year first hereinabove written.

"(Sd.)  F. M. Stanley
"(Sd.)  Mabel Stanley
"(Sd.)  George A. Virtue."

Respondents alleged and gave evidence that the provision of the contract for delivery within twenty days of an abstract of title of the Benton county land was waived by Virtue; that respondents were at all times ready, able and willing to perform the contract as modified by the waiver, but that Virtue failed and refused to carry it out.

Appellants contend: (1) That the settlement contract lacked mutuality, being a mere offer which was withdrawn before performance by respondents, and that there was no binding agreement on their part to perform, and the contract is therefore unenforceable. (2) That time was of the essence of the contract, and it not having been performed within the time provided, it was terminated. (3) Respondents were guilty of laches sufficient under the circumstances to render it inequitable to enforce the contract. (4) The property (in Benton county), by reason of neglect by the respondents, after the making of the contract and prior to the time they tendered performance and prior to the time they were able to perform, had so depreciated in value as to make it inequitable to enforce the contract.

I.   We are not impressed with the assertion that the contract lacked mutuality. It was prepared by George A. Virtue, and urged upon respondents. Its consideration to each was the mutual promises and covenants of the other. It had for its object the settlement of the existing indebtedness of respondents. It was clear and explicit. It is correct that a contract naked of any obligation or duty on one side—a *nudum pactum*—is not enforceable. But it is elementary, and requires no argument or citation to sustain, that if a contract contains mutual or reciprocal duties, burdens, or obligations, and the intent thereof can be ascertained by any

fair construction, it may be enforced, specifically, when possible and appropriate, or by compensating the injured party for any breach by the other. *Spokane, Portland & Seattle R. Co. v. Ballinger*, 50 Wash. 547, 97 Pac. 739, cited by appellants to support their contention, is not in point. There was a plain option contract, both in its expressions and in the force of its terms, involved in that case. A more apposite case is *Wright v. Suydam*, 72 Wash. 587, 131 Pac. 239, which to some extent supports the mutuality of the present contract. This contract provides on the one hand, that within twenty days after May 29, 1913, respondents would furnish an abstract showing good and merchantable title, except for two certain mortgages aggregating $2,700, of the Benton county land; and within thirty days after the same date, they would convey to Virtue, by good and sufficient warranty deed, the land in Benton county, subject to the two mentioned mortgages; it also required respondents, on or before the delivery of their deed, to repay to Virtue the sum of $525.30 paid by him for certain municipal assessments and for which respondents had given a mortgage nominally running to one Compton; on the other hand, on performance of these conditions, it required Virtue to satisfy his note and mortgage and the note and mortgage for $525.30 to Compton for money paid to discharge the special assessments on the mortgaged premises. It was, therefore, a mutual obligatory contract, upon which appellants could tender performance of the things to be done by them, demand performance of the things to be done by respondents, and specifically enforce the same. Most certainly the appellants' obligations were reciprocal and concurrent. 9 Cyc. 325.

II.     There is much more force to the point that time was of the essence of the settlement contract. It required a sufficient conveyance of a good, marketable title, with certain specified exceptions, by respondents, within thirty days and concurrently therewith, payment of the $525.30 note and mortgage, the conveyance to be preceded ten days by the

delivery of an abstract showing such title. The provision for the abstract was incidental, of course, to the conveyance, and was merely for the production of evidence of the condition of the title when conveyed. The contract stipulated that if respondents should fail to perform their conditions, the Compton note and mortgage for $525.30 should be retained by George A. Virtue. They failed to perform as agreed. There is evidence of waiver of the delivery of the abstract within twenty days, but there is not a syllable of evidence of waiver by Virtue of the payment of the $525.30, and the delivery of the deed to the Benton county land. They were the more substantial terms resting upon respondents. They tendered the abstract on September 5, 1913, but neither at that time, nor at any other time until they answered in this suit, did they tender the $525.30 or the deed. At the trial, they tendered the deed as well as the abstract and declared their readiness and ability to pay the money.

Respondents urge that at all times after appellants' notice of rescission of August 8, 1913, no tender of any of the terms was necessary, for from that date they were refused in advance. There were no express words in the contract that "time was of the essence thereof," and an intention to make time essential cannot be inferred from the mere fixing of a day for the delivery of a deed or the payment of the price. Time is essential whenever that clearly appears to have been the intention of the parties. 36 Cyc. 713. Although we here find stipulations in the contract clearly and expressly providing that respondents shall perform the things they agreed to perform within thirty days after May 29, 1913, we do not hold that time was of the essence thereof. 26 Cyc. 707. Failing so to perform, however, they were notified of its rescission.

Respondents assert that they were lulled into security by George A. Virtue's statement as to procuring an abstract "as soon as they could." The furnishing of the abstract was not the most important thing. Virtue might, without detri-

ment to himself, probably have waived the abstract entirely. There were other more substantial conditions to be performed which were of the essence of the contract. Mere silence as to the other matters could not lull them into security where it was their duty to act.

"A waiver is not to be implied from the plaintiff's silence, because there was no obligation on the plaintiff to say anything on the subject. The intention to waive a right must be established by language or conduct, and not by mere conjecture or speculation." *Texas & St. L. R. Co. v. Rust,* 19 Fed. 239, 245.

See, also, *Garvey v. Barkley,* 56 Wash. 24, 104 Pac. 1108.

Cases cited by respondents on that question do not sustain their position. In *Opsjon v. Engebo,* 73 Wash. 324, 131 Pac. 1146, there was express language as well as conduct on the part of vendor obviously waiving the time clause of the contract. In *Skoog v. Columbia Canal Co.,* 63 Wash. 115, 114 Pac. 1034, this court held that there was no time fixed in the contract for performance by the *vendor,* and hence the vendee could not arbitrarily end the contract without affording the vendor reasonable time to perform after demand. In *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500, it was held that the vendor waived the time clause of the contract by his forbearance to assert it for over three years, while he lived near the land, and the vendee made valuable improvements on the land during that period of which vendor knew, and the vendee assigned the contract to another with vendor's knowledge.

Respondents further maintain that there is another principle in their aid; that, where land is to be conveyed and money is to be paid as a consideration therefor, or other land exchanged, the covenants are mutual, dependent covenants, and in order to put the other party in default, tender or performance and demand for the deed or the money must be made, and cite *Katz v. Hathaway,* 66 Wash. 355, 119 Pac. 804, and *Wright v. Suydam,* 72 Wash. 587, 131 Pac. 239.

Counsel misinterprets the principle and its application. The principle is based on equity and means, of course, that where there has been any departure or indulgence from the express and vital terms of the contract permitted by either party to the other, either expressly or by conduct, or the contract has lost any of its vitality, the party who has permitted such departure, in order to establish the contract upon its original terms, must demand strict performance by the other party and offer full and strict performance on his own part. That was the effect of the cases cited, and of many other cases in this state and elsewhere that might be cited. It has no application to a case where the vendee, such as appellant George A. Virtue is here, is in no wise in default or has not waived express terms of the contract.

Although time was not of the essence of the contract, if the provisions had not been waived—and they certainly had not except as to the delivery of an abstract—the vendors, respondents, having had ample and reasonable time after the termination of the thirty-day period for performance by them, namely, after June 28, 1913, their status not having meanwhile been changed by any act or conduct of the appellants to the detriment of the vendors, and having failed and neglected for almost another thirty days after notice of rescission to make any attempt to tender performance, and then only partially, we feel compelled to hold that appellant was wholly within his rights in terminating the contract by notice and enforcing his original contracts—the note and mortgage.

"If one party gives the other notice that he does not hold himself bound to perform and will not perform the contract, and the other party makes no prompt assertion of his right to enforce the contract, equity will consider the latter as acquiescing in the notice, and as abandoning his equitable right. So long as he takes no action, he is in fact exercising his option to consider the contract abandoned. In such case, a comparatively brief delay will be a bar." 36 Cyc. 728.

There may be some hardship in this doctrine, but "equity rewards the diligent." We are of the opinion, therefore, that respondents are not entitled to specific performance of the contract relied upon.

Regarding respondents' other affirmative defenses, it must be manifest that the alleged fraud in the original transaction, the want or failure of title to the shore lands, and the right of action upon the implied or express covenants in the deed, were waived by respondents. The evidence is that the purchase by the respondents of the shore lands from the state was made on January 1, 1909. Mr. Stanley had, some time previously, as he states, taken the matter up with Mr. Virtue to induce him to purchase the lots from the state or furnish the money therefor. There is a conflict here, of course, Virtue testifying, as also another witness, that Stanley knew in 1906, when the conveyance by Virtue was made, that he was purchasing only the preference right to the shore lands. Be that as it may, he had full knowledge of the condition of the title prior to January 1, 1909. Having that knowledge, and having purchased on that date the state's title, and without any apparent overreaching or compulsion whatever, he and his then wife afterwards, on January 25, 1909, deliberately gave the new note and mortgage now in action to extinguish and take the place of the former $2,500 notes and mortgage on the premises, to cover the purchase price remaining unpaid on January 25, 1909. In addition thereto, Mr. Stanley and his present wife, on May 29, 1913, signed the contract in writing set up in their cross-complaint, which recognized the note and mortgage in action. These circumstances most certainly constitute waiver on their part of the alleged fraud and of the breach of the covenants of warranty in the deed.

These facts also determine respondents' claims of error on being compelled to elect between the affirmative defenses and cross-action. Having by their acts and conduct waived their rights, if any, under the warranty, irrespective of the legal

propriety of the order of the court requiring them to elect, the enforced election was without prejudice to them.

The same facts, also, upon the same reasoning, dispose of their fourth affirmative defense and counterclaim, and there was consequently no error in the judgment of the court dismissing the same.

The appellants are entitled to judgment on their note for the amount sued for, with attorney's fee and decree foreclosing the mortgage. The trial judge did not pass upon the question of attorney's fee, and it is not within our province in the first instance to pass upon what is a reasonable attorney's fee to be allowed plaintiff or control the discretion of the trial court. The decree is reversed, and remanded with direction to determine and fix the amount of attorney's fee and enter judgment for appellants, including such attorney's fee and costs, in accordance with this opinion.

MORRIS, C. J., MOUNT, and MAIN, JJ., concur.